Richard Barry HURLEY, et al., Petitioners,

v.

BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

Mike K. LUND, et al., Petitioners,

v.

BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

Steve M. RODRIGUEZ, Petitioner,

v.

BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

Mike D. POULSEN, Petitioner,

v.

BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

Nos. 20828, 20892, 20931 and 21045.

Supreme Court of Utah.

Dec. 12, 1988.

Waine Riches, Salt Lake City, for petitioners.

K. Allan Zabel, Salt Lake City, for respondent.

STEWART, Justice:

The petitioners seek reversal of an order of the Board of Review of the Utah Industrial Commission denying them certain benefits under the Trade Act of 1974, 88 Stat. 1978, 19 U.S.C. §§ 2101–2487 (1982), as amended.

The Trade Act provides financial assistance (TRA benefits) to workers who are laid off by companies whose operations are adversely affected by foreign competition. TRA benefits are to assist in helping qualified employees to retrain and to find other jobs. To be eligible for TRA benefits, a claimant must establish that (1) the discharge from employment occurred no more than one year prior to certification of the claimant's employer by the Secretary of Labor as adversely affected by foreign trade, within the two-year certification period, and before the certification is terminated by the Secretary of Labor; (2) the claimant worked 26 of the 52 weeks prior to separation; and (3) the claimant was entitled to and exhausted unemployment insurance benefits. 19 U.S.C. § 2291(a)(1)–(3) (1982).

The four petitioners were employed by Kennecott Minerals Corporation (Kennecott) and had been initially laid off during the summer of 1982. They received regular state unemployment insurance benefits

while unemployed. In October, 1982, Kennecott rehired petitioners Lund and Rodriguez, and in June, 1983, Kennecott rehired petitioners Hurley and Poulsen. In July, 1984, all four were laid off a second time due to the adverse effects of foreign competition on Kennecott's operations. On January 13, 1983, the Department of Labor certified Kennecott under the Trade Act as an employer adversely affected by foreign competition pursuant to 19 U.S.C. § 2273(a) (1982) and approved TRA benefits for Kennecott employees laid off on or after January 1, 1982.

After exhausting their individual entitlements to regular state unemployment compensation and federal supplemental compensation, the petitioners filed for TRA benefits. The Board denied the petitioners' applications on the ground that they had failed to apply for benefits within 52 weeks after their first termination from employment. At the time the petitioners filed their claims for TRA benefits, § 2293(a)(2) of the Trade Act provided that the payment of TRA benefits was limited to a 52–week period (a 78–week period if a claimant was enrolled in approved training) commencing with the time that the claimant had exhausted his or her unemployment insurance "that is regular compensation."[1] The Board adopted the findings and conclusions of the administrative law judge, who stated:

> Sections 635.3(r) & (s) of Federal Regulations talk about the first benefit period and the first exhaustion of unemployment insurance. Those sections clearly indicate the first claim filed must be the claim used in computing the 52–week time limit. This time limit begins with the week the claimant first exhausted his entitlement to regular unemployment compensation on the first claim filed af-

ter being separated from the trade affected employer.

At the time critical to this case, the language of 19 U.S.C. § 2293(a)(2) was:

> A trade readjustment allowance shall not be paid for any week after the 52–week period beginning with the first week following the first week in the period covered by the certification with respect to which the worker has exhausted (as determined for purposes of section 2291(a)(3)(B)) all rights to that part of his unemployment insurance that is regular compensation.[2]

Thus, the Board ruled that a benefit application had to be filed within the 52–week period referred to in § 2293(a)(2) and that the period began to run with the petitioners' *first* discharge from Kennecott and continued to run even if the petitioners had returned to work and were working when the period expired.

The issue before the Court is whether the Board erred in holding that the 52–week period should be computed from the petitioners' first lay-off or their second lay-off.

■ We turn first to a determination of the appropriate scope of judicial review of the Board's order. There are essentially three standards that determine the scope of judicial review of agency action. *See generally Utah Dep't of Admin. Serv. v. Public Serv. Comm'n*, 658 P.2d 601, 608–12 (Utah 1983). The correction-of-error standard applies to agency rulings on issues of law and extends no deference to agency rulings. An agency's findings of fact, however, are accorded substantial deference and will not be overturned if based on substantial evidence, even if another con-

---

1. In addition to the 52 weeks of benefits provided by 19 U.S.C. § 2293(a)(2), 19 U.S.C. § 2293(a)(3) (1982) provides that "payments may be made as trade readjustment allowances for up to 26 additional weeks ... in order to assist the adversely affected worker to complete [vocational] training...." Because petitioners Lund, Rodriguez, and Poulsen were involved in vocational training, their claims involve a 78–week period rather than the 52–week period set

forth in § 2293(a)(2). That does not affect, however, the basic issue of when the TRA benefit period begins to run. For simplicity, we refer throughout this opinion to the 52–week period only.

2. The 52–week period referred to in § 2293(a)(2) was extended to 104 weeks in 1986. *See* 19 U.S.C. § 2293(a)(2) (Supp. IV 1986).

clusion from the evidence is permissible.[3] As to questions of mixed law and fact, a reviewing court usually accords an agency decision some deference, i.e., an agency's decision will not be set aside unless the agency's conclusion is unreasonable.

The Board argues that the Court should apply the reasonable basis standard of review because the issue is one of mixed fact and law. The petitioners argue, on the other hand, that the question of whether the 52–week period should run from their first or second termination from Kennecott is solely a matter of statutory interpretation and solely a question of law and therefore no deference should be accorded the Board's decision.

■ Issues of mixed law and fact are often illuminated by an agency's expertise, and special technical knowledge may be of particular help in determining whether the facts fall within the meaning of statutory terms. When that is the case, the decision should be judged on a reasonableness standard. *Utah Dep't of Admin. Serv.*, 658 P.2d at 609–12. *See, e.g., Logan Regional Hosp. v. Board of Review*, 723 P.2d 427, 429 (Utah 1986) (Board's interpretation of "just cause" to require fault); *Barney v. Department of Employment Sec.*, 681 P.2d 1273, 1275 (Utah 1984) (Department's interpretation of "in employment"); *Gray v. Department of Employment Sec.*, 681 P.2d 807, 810–11 (Utah 1984) (Department's interpretation of "good faith in an active effort to secure employment"); *Pinter Constr. Co. v. Frisby*, 678 P.2d 305, 307 (Utah 1984) (Industrial Commission's interpretation of "employee"); *Salt Lake City Corp. v. Confer*, 674 P.2d 632, 636 (Utah 1983) (Industrial Commission's interpretation of "impairment"); *Vance v. Fordham*, 671 P.2d 124, 128 (Utah 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984) (Department of Registration's interpretation of "unprofessional conduct"); *Clearfield City v. Department of Employment Sec.*, 663 P.2d 440, 443–44 (Utah 1983) (Department's interpretation of "deliberate, willful or wanton" language in

statute to require intent). *See also Savage Bros. Inc. v. Public Serv. Comm'n*, 723 P.2d 1085, 1087 (Utah 1986) (Commission's interpretation of "dry chemicals" and "barite" in certificate of public conveyance and necessity).

■ The correction-of-error standard of judicial review applies to agency decisions involving statutory interpretations which an appellate court is as well suited to decide as the agency. In *Bennett v. Industrial Comm'n*, 726 P.2d 427, 429 (Utah 1986), the Court stated:

We do not defer to the Commission when construing statutory terms or when applying statutory terms to the facts unless the construction of the statutory language or the application of the law to the facts should be subject to the Commission's expertise gleaned from its accumulated practical, first-hand experience with the subject matter.

The correction-of-error standard also applies when the issue is one of basic legislative intent. In *Big K Corp. v. Public Serv. Comm'n*, 689 P.2d 1349, 1353 (Utah 1984), we held that no deference was due agency construction of "statutory or case law" or of its organic statute unless it is clear that the agency is in a superior position by virtue of expertise to give effect to "the regulatory objective to be achieved." *Id. Cf. Williams v. Mountain States Tel. & Tel. Co.*, 763 P.2d 796 (Utah 1988).

■ A correction-of-error standard also governs the construction of ordinary statutory terms in the organic statute of an administrative agency. *See, e.g., Bennett*, 726 P.2d at 429 (coverage of workers' compensation statute to subcontractor's employee); *Dean Evans Chrysler Plymouth v. Morse*, 692 P.2d 779, 782 (Utah 1984) (applicable limitations period under workers' compensation act); *Big K Corp.*, 689 P.2d at 1353 (proper construction of statutory "deficiency of service" standard); *Kearns–Tribune v. Public Serv. Comm'n*, 682 P.2d 858, 859 (Utah 1984) (PSC authority to impose a tagline requirement on utility's advertisement).

---

**3.** In some cases, however, less deference is given to factual determinations. For example, a court may exercise greater scrutiny when constitutional rights are at stake.

■ The facts here are not in dispute. Nor is there dispute about the application of the law to the facts. The real dispute is solely, what does the law require? Specifically, the issue is, when does the 52–week eligibility period begin to run under 19 U.S.C. § 2293(a)(2)? That is a straightforward issue of statutory construction. Resolution of the issue would not be aided by agency expertise, and no term of art is at issue. Indeed, it is the courts that have expertise in matters of this nature, not an administrative agency. *See Dean Evans Chrysler Plymouth,* 692 P.2d at 782. Of course, the statute and regulations, once properly construed, must be applied to the facts of the case, but that does not make the issue one of mixed law and fact. There is, in short, no reason to accord the Board a zone of reasonableness in its construction of the law. The Board either read the statute and regulations correctly, or it did not.

■ We turn next to the merits of the dispute. An analysis of § 2293(a) does not support the Board's position. That provision limits the amount payable to a qualifying employee but does not establish additional qualifications for receiving TRA benefits. 19 U.S.C. § 2293(a)[4] (1982 & Supp. IV 1986). Nothing in the language of either § 2291[5] or § 2293 requires commencement of the 52–week eligibility period with a claimant's first separation from work. That was the law before Congress amended the Act in 1981 and remained the law after the amendment.[6] *Skrundz v. Review Bd. of Ind. Employment Sec.,* 444 N.E.2d 1217 (Ind.Ct.App.1983); *Claim of Walter,* 103 A.D.2d 265, 479 N.Y.S.2d 918 (1984).

The pertinent federal regulations are directed more specifically to the issue at hand. Proposed Rule 635.11(a)(2), as it appeared in 48 Fed.Reg. 9450 (1983),[7] initially referred to a claimant's "first separation" as the time for commencing the running of the eligibility period, but the language actually adopted in 20 C.F.R. § 617.11(a)(2) (1988)[8] refers to the *"first qualifying separation"* (emphasis added), and section 617.3(t) defines that phrase as the "first total or partial separation ... *on the basis of which the individual qualifies for TRA."* (Emphasis added.)

The petitioners' first *qualifying* separations from employment were their second separations from Kennecott. They did not qualify for TRA benefits after their first separation because they returned to work before they had exhausted their right to regular unemployment compensation bene-

---

4. See text, *supra* p. 5.

5. 19 U.S.C. § 2291, in relevant part, provides that an eligible worker qualifies for assistance if:

(1) Such worker's last total or partial separation before his application under this part occurred—

(A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment, and

(B) before the expiration of the 2–year period beginning on the date on which the determination under section 2273 of this title was made, and

(C) before the termination date (if any) determined pursuant to section 2273(d)....

6. The amendments are found in Title XXV of the Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35.

7. The Board cites frequently to "20 C.F.R. § 635." A review of title 20 of the Code of Federal Regulations for the years 1984, 1985, 1986, 1987, and 1988 indicates that § 635 contains regulations for "Veterans' Employment Programs under Title IV, Part C of the Job Training Partnership Act," not regulations for administering trade readjustment allowances. The language actually quoted by the Board appears in the Proposed Rules in 48 Fed.Reg. 9450 (1983). The language in those proposed rules later appears in 20 C.F.R. § 617 (1988). The Board cites the proposed rules in a way that incorrectly suggests they had been codified at the time the parties filed their briefs.

8. 20 C.F.R. § 617.11(a) (1988) elaborates upon the basic qualifying requirements for entitlement to TRA benefits under 19 U.S.C. § 2291. Section 617.11(a)(2) details the separation requirement as follows:

Separation. The individual's first qualifying separation before application for TRA must occur:

(i) On or after the impact date

(ii) Before the expiration of the two-year period beginning on the date of the certification; and

(iii) Before the termination date, if any, of the certification.

fits, a necessary condition to qualification for TRA benefits under the statute, 19 U.S.C. § 2291(a)(3)(B) (1982).

Moreover, 29 C.F.R. § 91.7(b) (1986) specifically refers to a claimant's "last" separation,[9] which is defined in 29 C.F.R. § 91.3(a)(20) (1986)[10] as a claimant's most recent separation prior to application for TRA benefits. Unlike 20 C.F.R. § 617, which was relied upon by the Board, 29 C.F.R. § 91 was codified in the *Code of Federal Regulations* at the time the petitioners filed their claim. *See, e.g.,* 29 C.F.R. § 91 (1981). The Board plainly erred in relying on the language of proposed rules that were later modified before their adoption as final rules.

The Board also relies on the following language in 20 C.F.R. § 617.3(p) (1988) in support of its argument that the petitioners' unemployment benefit periods continued to run even though they had returned to work:

(p) "Exhaustion of UI" means exhaustion of all rights to UI in a benefit period by reason of:

(1) Having received all UI to which an individual was entitled under the applicable State law or Federal unemployment compensation law with respect to such benefit period; or

(2) *The expiration of such benefit period.*

(Emphasis added.) The Board contends that the expiration of the benefit period under the Act and the expiration of the period governing the right to receive unemployment benefits are treated separately within the regulation and are not necessarily coterminous. Therefore, the Board contends, the benefits period may expire even though a claimant fails to exhaust unemployment insurance benefits during that period. Even if the Board's assertion is correct, that does not support its conclusion that the benefits period continues to run after the claimant returns to work. To rule otherwise would be to undermine the remedial purpose of the statute by allowing benefits to be forfeited at a time when a worker could not qualify for them.

The Board's interpretation of 19 U.S.C. §§ 2291 and 2293 of the Trade Act of 1974 and the implementing regulations was erroneous.

Reversed and remanded.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

---

9.  29 C.F.R. § 91.7 (1986) sets forth the following qualifying requirements for TRA benefits:

> To qualify for a trade readjustment allowance an individual must meet each of the following requirements.
> (a) *Certification.* The individual must be an adversely affected worker covered by a certification.
> (b) *Separation.* The individual's last separation must occur:
> (1) On or after the impact date;
> (2) Before expiration of the 2 year period following the date of the certification;
> (3) Before the termination date, if any, of the certification;
> (4) Not more than one year before the date of the petition on which certification was granted, except as provided in section 246(b) of the Act; and

(5) Not before October 3, 1974, except as provided in section 246(b) of the Act.
> (c) *Wages and employment.* In the 52 weeks preceding the individual's last separation the individual must have at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm. Evidence that an individual meets this requirement shall be obtained as stated in § 91.8.

10.  29 C.F.R. § 91.3(a)(20) (1986) provides:

> "Last separation" means the total or partial separation from adversely affected employment most recently preceding an individual's application for trade readjustment allowances as to which it is determined that the individual qualifies under § 91.7.