Keith G. TAYLOR, et al., Plaintiffs and Appellants,

v.

UTAH STATE TRAINING SCHOOL, Defendant and Respondent.

No. 880187–CA.

Court of Appeals of Utah.

May 26, 1989.

L. Zane Gill, Salt Lake City, for plaintiffs and appellants.

R. Paul Van Dam and Neal T. Gooch, Salt Lake City, for defendant and respondent.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiffs appeal from the district court's judgment upholding a decision of the Personnel Review Board. The Board's hearing officer determined that plaintiffs' grievance against the Utah State Training School was untimely. Plaintiffs claim the hearing officer's decision was incorrect and that the district court erred in deferring to that decision. We agree and accordingly reverse.

## FACTS

Plaintiffs were employed by the Utah State Training School at its Woodland Academy. Because of the nature of their work, plaintiffs were entitled to receive supplemental "hazard" pay. On March 9,

1987, the Training School decided to discontinue the hazard pay to those employed in the Woodland Academy facility. On March 23, 1987, Taylor and the others received a letter dated March 18, informing them that their hazard pay was being discontinued effective May 16, 1987. On May 22, plaintiffs filed a grievance with their immediate supervisor. On June 15, they appealed his unfavorable decision to the Training School superintendent, who concluded their grievance was untimely because it was not filed within 20 days of the "event" giving rise to their grievance pursuant to Utah Code Ann. § 67–19–24 (1986).

Plaintiffs appealed this decision to the Personnel Review Board. The Board, through its hearing officer, upheld the decision that the grievance was untimely. The Board stated that the "event" giving rise to the grievance was the March 9, 1987 decision to discontinue the hazard pay and the letter received March 23 constituted notice of that event.

Plaintiffs then commenced this action in district court to challenge the Board's decision. The district court sustained the hearing officer's decision as rational and reasonable. This appeal followed.[1]

The key provision of the Utah Personnel Management Act provides in pertinent part as follows:

(1) No appeal shall be submitted under this chapter unless (a) it is submitted within 20 working days after the event giving rise to the appeal or (b) within 20 working days after the aggrieved employee has knowledge of the event giving rise to the appeal.

(2) Notwithstanding Subsection (1)(b), no employee may submit an appeal more than one year after the event giving rise to the appeal. . . .

Utah Code Ann. § 67–19–24 (1986).

Plaintiffs contend that the "event" giving rise to their grievance—"appeal" as the term is used in § 67–19–24—was when the change actually took effect, May 16, 1987, and not the date the decision to make the change was made, March 9, 1987. Thus, plaintiffs insist, their grievance was timely under § 67–19–24(1)(a) since it was filed only six days after the effective date of the change.

## STANDARD OF REVIEW

The district court deferred to the hearing officer's decision, concluding that it was rational, reasonable and consistent with the purposes of the Utah Personnel Management Act. The court noted that when considering an agency's interpretation and application of statutory law to the basic facts, the court should defer to the agency so long as the agency's action is reasonable and rational. The standard used by the district court is admittedly the proper standard for reviewing mixed questions of law and fact, as set out in *Department of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 609–12 (Utah 1983). However, plaintiffs argue that this case involves a question of law to which the courts should apply the "correction of error" standard, with no particular deference given to the agency's interpretation. *See, e.g., Williams v. Public Serv. Comm'n,* 754 P.2d 41, 50 (Utah 1988); *Administrative Services,* 658 P.2d at 608.

As explained by Justice Oaks in *Administrative Services,* there are three standards commonly employed in appellate review of agency decisions. These standards operate on a continuum. At the one end are pure questions of fact on which the court defers to the agency's findings "if they are supported by any 'evidence of any substance whatever.'" 658 P.2d at 609. At the opposite end of the spectrum are questions of general law to which the "correction of error" standard is applied. *Id.* at

---

**1.** We have previously criticized this inefficient, two-tiered approach to judicial review of agency decisions, where first the district court and then an appellate court review an agency decision "on the record." *See Davis County v. Clearfield City,* 756 P.2d 704, 710 n. 8 (Utah Ct.App.1988). The Utah Administrative Procedure Act wisely avoids this duplicative procedure. *Id. See* Utah Code Ann §§ 63–46b–15 to –17 (1988). The Act, however, does not apply to this or other administrative proceedings commenced before the effective date of the Act. *See* Utah Code Ann. § 63–46b–22(2) (1988).

608. Between these two extremes are "[a] variety of issues on which [administrative] decisions are entitled to weight, but are subject to judicial review to assure that they fall within the limits of reasonableness and rationality." *Id.* at 610.

Subject to this intermediate standard, as previously noted, are mixed questions of law and fact. Ordinarily subject to this intermediate standard are also agency decisions interpreting and applying the operative provisions of the agency's enabling statute. *Id. See also Adele's Housekeeping, Inc. v. Department of Employment Sec.*, 757 P.2d 480, 482 (Utah Ct.App.1988).

The *Administrative Services* case explains why statutory interpretations, which ordinarily pose questions of law, are often reviewed under this intermediate standard:

> An agency's interpretation of key provisions of the statute it is empowered to administer is often *inseparable from its application of the rules of law to the basic facts....* In reviewing decisions such as these, a court should afford great deference to the *technical expertise or more extensive experience* of the responsible agency.

658 P.2d at 610 (emphasis added).

Conversely, Justice Oaks noted that questions of law involve issues "on which this Court acts without deference to the decision of the [agency] because the Court has comparatively greater qualifications on these questions." *Id.* at 608. "Even with respect to the [agency's] construction of its organic statute, we do not defer unless the [agency] by virtue of expertise and experience ... is in a superior position to give effect to the regulatory objectives." *Big K Corp. v. Public Serv. Comm'n*, 689 P.2d 1349, 1353 (Utah 1984).

Recently, the Utah Supreme Court again emphasized the pivotal role of agency expertise. *Hurley v. Board of Review*, 767 P.2d 524 (Utah 1988). In *Hurley*, the Court noted that "[i]ssues of mixed law and fact are often illuminated by an agency's expertise.... *When that is the case,* the decision should be judged on a reasonableness standard." *Id.* at 527 (emphasis added). On the other hand, "[t]he correction-of-error standard of judicial review applies to agency decisions involving statutory interpretations which an appellate court is as well suited to decide as the agency." *Id.* at 527.

■ It is the relevance of agency expertise in a particular case which prompts us to refer to a continuum or spectrum along which the three standards of review operate, in a kind of sliding-scale fashion, rather than to contemplate three distinct boxes into which all issues which arise in administrative proceedings must be shoehorned. The more likely it is that agency expertise will assist in resolving an issue, the more deference courts should give to the agency's resolution. The less pertinent agency insight is—or the more likely it is that judicial expertise will be most helpful—the less deference need be paid by reviewing courts to the agency's disposition.

This having been said, as noted in *Adele's Housekeeping*, courts in the majority of Utah cases have applied the intermediate "reasonable and rational" standard to agency interpretation of statutory provisions. 757 P.2d at 482. However, a careful review of the decisions referred to in *Adele's Housekeeping* shows that they all involve the interpretation of terms or phrases more easily understood by the agency, either because the term or phrase involved is within the agency's area of expertise or because the interpretation of the term or phrase was inseparable from its application to the particular facts of the case.[2] *See id.* & n. 1. While an agency should be given deference in interpreting and applying a term or phrase within its area of expertise, there is no reason for such deference when the agency is attempting to interpret a term which is of a

---

**2.** If *Adele's Housekeeping* did intend to eliminate any focus on agency expertise in determining what standard of review to apply, the more recent Utah Supreme Court decision in *Hurley v. Board of Review*, 767 P.2d 524, 527 (Utah 1988), while not mentioning *Adele's Housekeeping*, clearly rejects that approach and affirms that agency expertise is a fundamental consideration in this regard.

sort better understood and more commonly interpreted by the courts. *Hurley,* 767 P.2d at 527.

■ In the case at hand, the hearing officer had no substantial expertise in the area of personnel management,[3] nor had the Board considered the issue before. More importantly, courts are quite experienced in resolving questions of timeliness and ripeness and, indeed, may be said to have superior expertise on such questions. Lastly, the determination of what constitutes an "event giving rise to an appeal" does not require the application of the basic facts from the case. We therefore review the decision below as a question of law and apply the "correction of error" standard, according no deference to the hearing officer's determination.

### "EVENT" WHICH TRIGGERS § 67–19–24(1)(a) TIME LIMITATIONS

■ "We construe a statute on the assumption that each term is used advisedly and that the intent of the Legislature is revealed in the use of the term in the context and structure in which it is placed." *Ward v. Richfield City,* 716 P.2d 265, 266 (Utah 1984). Upon a plain reading, § 67–19–24(1)(a) seems to say an employee has 20 working days after an event actually occurs in which to file a grievance or "appeal."[4] This interpretation is supported by other provisions in the Personnel Management Act, such as § 67–19–20(5), which sets forth the duties of the Personnel Review Board. In that section, the Board is directed to "hear appeals from employees directly affected by *actions taken....*" Utah Code Ann. § 67–19–20(5)(a) (1986) (emphasis added). This past tense reference to appealable actions clearly suggests that the "event" giving rise to an

appeal is the actual action once taken, not some prior indication that an action will be taken in the future.

The absence of more particular language in § 67–19–24 is not due to the Legislature's inability to be more specific. Section 67–19–18, outlining specific procedures for reduction-in-force grievances, provides: "The notice of appeal must be submitted within 20 working days after the employee's receipt of written notification of separation." Utah Code Ann. § 67–19–18(4)(e) (1986). This provision appears to establish an exception to the ordinary procedure established in § 67–19–24. The context, structure, and placement of these statutory provisions demonstrate an intent that appeals may be filed within 20 working days after an action has been taken unless a narrowly drawn exception applies and requires an appeal to be taken 20 working days following written notification.

Certain policy considerations also support our interpretation. The Personnel Management Act is designed "to provide a formal procedure for processing the appeals and grievances of state employees without discrimination, coercion, restraint or reprisal." Utah Code Ann. § 67–19–2(7) (1986). It is clear that to maintain a grievance system free from these problems, there needs to be as much consistency in practice as possible. Accordingly, the "event" triggering an appeal or grievance should be readily identifiable as such in every case. Defining "event" as the effective date of the action being appealed creates such consistency.

In addition to consistency, there are several other policy reasons for such a definition of "event." Grievants will know exactly when the appeal time begins to run. Controversy concerning exactly when a decision was made will be eliminated, as will

---

**3.** The hearing officer was not even an employee of the Division of Human Resource Management, the administrative experts on personnel matters. He was an attorney whose services as a hearing officer were contracted for. Additionally, his lack of relevant expertise or experience is illustrated by the fact that his entire decision was based on the definition of "event" found in Webster's dictionary.

**4.** In the posture of this case, we need not decide whether the effect of § 67–19–24(1)(b) is to give an employee the *option* of filing a grievance earlier where advance notice is given or whether it is intended to apply only in situations where the "event" has happened and more than 20 working days elapsed before the event came to the employee's attention.

concerns about decision finality. This interpretation of "event" also encourages informal negotiation during the period between announcement and intended effective date rather than mandating a precipitous and potentially unnecessary grievance filing upon an initial decision not yet implemented. Lastly, by waiting until action has actually been taken, the existence of a true "case or controversy" is assured.

This is also the approach taken in the federal personnel system, although the corresponding federal provision is more explicit than Utah's. The similar federal provision governing the Merit Systems Protection Board is contained in 5 C.F.R. § 1201.22(b) (1988), which provides: "A petition for appeal must be filed during the period beginning with the day after the effective date of the action being appealed until not later than 20 days after the effective date."

In *Allen v. Department of Housing and Urban Development*, 4 M.S.P.R. 264 (1980), the Merit Systems Protection Board concluded that the above federal provision meant appeals must be filed after a change actually goes into effect and not upon the mere announcement of the decision. In *Allen*, plaintiff's salary was to be retroactively reduced. Plaintiff filed her grievance 20 days after receiving her first paycheck reflecting the reduction. The agency considered the grievance untimely because more than 20 days had elapsed since the plaintiff received notice of the reduction. The Board held: "The effective date of a reduction in pay is the date as of which an appellant begins to be paid at a lower rate." *Id.* Other federal administrative cases have similarly held that filing an appeal before the effective date of the action is premature. *See, e.g., Haynes v. Tennessee Valley Authority*, 30 M.S.P.R. 578 (1986); *Rogers v. Consumer Product Safety Comm'n*, 21 M.S.P.R. 113 (1984); *Johnson v. United States Postal Serv.*, 18 M.S.P.R. 26 (1983). *But see* Note 4, *supra*.

## CONCLUSION

The plaintiffs' grievance was made timely and should not have been dismissed.

The decision of the district court is therefore reversed. Plaintiffs' grievance is remanded to the Personnel Review Board for consideration on the merits.

GARFF and GREENWOOD, JJ., concur.