**Howard BEVANS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, and Yaleway Transportation, Inc., Respondents.**

**No. 890402–CA.**

Court of Appeals of Utah.

April 4, 1990.

Robert Breeze (argued), Salt Lake City, for petitioner.

Steven Aeschbacher (argued), Salt Lake City, for Yaleway.

M. Gale Lemmon, Legal Counsel, Salt Lake City, for Industrial Com'n.

Before DAVIDSON, JACKSON and LARSON,[1] JJ.

1. John Farr Larson, Senior Juvenile Judge, sitting by special appointment pursuant to Utah

**JACKSON, Judge:**

Petitioner Howard Bevans challenges an Industrial Commission order that affirmed an award of workers' compensation benefits to him but granted his employer, Yaleway Transportation, Inc. (Yaleway), a credit for benefits paid to Bevans by Yaleway's no-fault insurer. We vacate the Commission's order and remand for entry of an amended order eliminating the credit.

Bevans was injured in Nevada on September 19, 1988, in a one-vehicle rollover of the truck he was driving for Yaleway. He was examined at a hospital there but did not remain overnight. He obtained treatment the next day at the Veterans' Administration Hospital in Salt Lake City, Utah. Unable to drive a truck because of ongoing problems with his injured back and knee, in mid-October Bevans applied for temporary total disability benefits and payment of his medical bills.

As required by law, the truck was insured under an accident policy paid for by Yaleway that provided up to $3,000 per person for medical expenses incurred in an accident involving the truck. The truck insurer, National American Insurance Company (National), sent a check directly to Bevans for the policy limit amount sometime between mid-October and mid-November. The check was payable to Bevans and the Veteran's Administration Hospital. Bevans took the check to the hospital, which kept $254 as payment of his outstanding bill and returned the balance of the proceeds to Bevans.

Yaleway had not obtained coverage from the Workers' Compensation Fund for its drivers. *See* Utah Code Ann. § 35–1–46 (1988); *see also* Utah Code Ann. § 35–1–58 (1988) (permitting injured employee to elect workers' compensation remedy despite employer's uninsured status). The trucking company had attempted to set up an independent contractor relationship with all its drivers, including Bevans. Nonetheless, in unchallenged findings and conclusions adopted by the Industrial Commission, the

Code Ann. § 78–3–24(10) (Supp.1989).

administrative law judge (A.L.J.) determined that Yaleway was Bevans's employer for purposes of workers' compensation. *See* Utah Code Ann. § 35–1–42(2) (1988). As an employee found to have been injured by accident arising out of and in the course of his employment, Bevans was statutorily entitled to be paid "compensation for loss sustained on account of the injury ... and such amount for medical, nurse, and hospital services and medicines ... as provided" in the workers' compensation statute. Utah Code Ann. § 35–1–45 (1988); *see* Utah Code Ann. § 35–1–81 (1988) (requiring payment of injured employee's reasonable medical expenses in addition to compensation for lost wages). With the exception of the $254 Veterans' Hospital bill that had already been paid, Yaleway was ordered to pay all of Bevans's unpaid medical expenses, which exceeded $2,746 by the time of the hearing, and to pay temporary total disability compensation computed in accordance with the formula set forth in Utah Code Ann. § 35–1–65 (1988). The A.L.J. further concluded that "equity demands" that Yaleway be given a $2,746[2] "credit" representing the balance of the $3,000 truck insurance check retained by Bevans after payment of his VA bill. The award specifically provided that no payments for wages lost due to Bevans's temporary disability were to be made by Yaleway until the credit was exhausted. Apparently concerned about giving any windfall to Bevans from an insurance policy paid for by Yaleway, the Industrial Commission affirmed the A.L.J.'s order on Bevans's petition for review, summarily concluding the credit was "not disallowed."

The narrow issue presented in the petition before this court is whether the Industrial Commission, in allowing the aforementioned credit to Yaleway, erroneously interpreted the scope of the authority granted to it under the workers' compensation statutes.

## STANDARD OF REVIEW

Because this proceeding was commenced after January 1, 1988, the scope of our review of the Industrial Commission's order is governed by section 63–46b–16(4) of the Utah Administrative Procedures Act (UAPA), Utah Code Ann. §§ 63–46b–1 to –22 (1989).[3] *See* Utah Code Ann. § 63–46b–22(1) (1989). Under the relevant portion of section 63–46b–16(4)(d) (1989), we can grant relief to Bevans if the agency "erroneously interpreted" the law to his substantial prejudice.

Section 63–46b–16(4)(d) is identical to its counterpart in the 1981 Model State Administrative Procedures Act (MSAPA), section 5–116(c)(4). The official comment to that section notes that the role of a court reviewing agency action is generally a limited one. MSAPA § 5–116, 14 U.L.A. 70, 154 (Supp.1990). However, with regard to an administrative agency's interpretation of the law, the comment states, "courts generally give little deference to the agency, with the result that a court may decide that the agency has erroneously interpreted the law if the court merely disagrees with the agency's interpretation." *Id.* at 155.

Before the adoption of UAPA, issues involving the interpretation of the statutory boundaries of an agency's power and authority were treated by Utah courts as questions of law, which are reviewed under a correction-of-error standard with no deference to the agency's determinations. *See Utah Dep't Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 608 (Utah 1983); *Olympus Oil, Inc. v. Harrison,* 778 P.2d 1008, 1010 (Utah Ct.App.1989); *see also Hurley v. Board of Review,* 767 P.2d 524, 527 (Utah 1988) (correction-of-error standard applies when the issue is one of basic legislative intent). This absence of deference is appropriate because a determination of what authority has been statutorily con-

---

2. Yaleway was also credited with the $750 it had voluntarily paid directly to Bevans for lost wages prior to a ruling on Bevans's application for workers' compensation benefits, but Bevans does not contest this action by the Industrial Commission.

3. The UAPA is substantially similar to the 1981 Model State Administrative Procedures Act, reprinted at 14 U.L.A. 70 (Supp.1990). *See Utah A.P.A. 1988–89,* comments of the Utah Administrative Law Advisory Committee at 10 (April 25, 1988).

ferred on an administrative agency by the legislature is not "illuminated by [the] agency's expertise." *Hurley,* 767 P.2d at 527. On the contrary, it is an issue an appellate court is as well, or better, suited to decide as the agency itself. *See id.; Taylor v. Utah State Training School,* 775 P.2d 432, 435 (Utah Ct.App.1989); *see also Utah Dep't Admin. Servs.,* 658 P.2d at 608 (appellate court does not defer to agency on questions of general law because the court has "comparatively greater qualifications on these questions").

We conclude that, under section 63–46b–16(4)(d) of the UAPA, it is still appropriate for a court to review an agency's interpretation of its statutorily granted powers and authority as a question of law, with no deference to the agency's view of the law. We therefore will apply the correction-of-error standard to such an issue and uphold the Commission's statutory interpretation only if we conclude it is not erroneous.[4]

## AUTHORITY OF INDUSTRIAL COMMISSION

In this case, neither the A.L.J. nor the Industrial Commission claimed a statutory source for the power to grant Yaleway a credit for the benefits paid by its no-fault insurer to Bevans. The A.L.J. merely concluded, "Considering that the Commission is akin to a court of equity, I find that equity demands that [Bevans] give his employer a credit...." The credit was thus a product of the A.L.J.'s feeling that it would be unfair to allow Bevans to retain the proceeds of insurance paid for by his employer.

The Industrial Commission also assumed its power to affirm the credit granted Yaleway, without pointing to any statute giving it such authority. Instead, the Industrial Commission noted that there was no case

law directly on point disallowing the credit. It examined the decision in *Southeast Furniture Co. v. Barrett,* 24 Utah 2d 24, 465 P.2d 346 (1970), in which the court held that the workers' compensation fund was not entitled to an offset for the amounts paid to an employee for a compensable injury under an uninsured motorist provision in an insurance policy for which the employee had paid. The holding in *Southeast* was based on the court's conclusion that the no-fault insurer was not the alter ego of a third party tortfeasor for purposes of Utah Code Ann. § 35–1–62 (1974), which gave an employer or workers' compensation carrier a cause of action against a third party tortfeasor for reimbursement of compensation paid to the injured employee. The Industrial Commission, however, focused on the identity of the purchaser of the policy as the critical factor in *Southeast Furniture* and reasoned that an offset should be allowed an employer who paid for the insurance policy that paid benefits to an injured employee.[5] Affirmance of the A.L.J.'s allowance of a credit to Yaleway was obviously motivated by fairness concerns. In its order, the Industrial Commission stated it would not be "appropriate" for Bevans to keep both the no-fault insurance proceeds and a full workers' compensation award, thereby obtaining more benefits than another injured employee could obtain through workers' compensation alone.

Regardless of the fairness or appropriateness of Bevans's retention of the no-fault benefits in addition to workers' compensation benefits, the Industrial Commission remains a statutorily-created agency, not a court of equity. As such, the Industrial Commission has only those powers expressly or impliedly granted to it by the legislature. *See Utah Copper Co. v. In-*

---

4. *Cf. Pro–Benefit Staffing, Inc. v. Board of Review,* 775 P.2d 439 (Utah Ct.App.1989) (under second part of section 63–46b–16(4)(d), agency's *application* of law to the facts presents a question of mixed law and fact, which reviewing court upholds if within limits of reasonableness and rationality).

5. Presumably it would have drawn the same conclusion from *Anderson v. Industrial Comm'n,* 108 Utah 52, 157 P.2d 253 (1945), in which the Utah Supreme Court refused to grant a credit to the employer for medical expense benefits paid by an accident policy paid for by the injured employee.

*dustrial Comm'n,* 57 Utah 118, 193 P. 24, 26 (1920).

Respondents recognize there is no provision in the Utah workers' compensation statute expressly or impliedly authorizing any reduction of workers' compensation benefits by amounts received by an employee accidently injured in the course of employment from his or her uninsured employer's no-fault insurer. Nonetheless, they would have us imply such a power from the legislature's disfavor of "double recovery" from both no-fault insurance and workers' compensation, which respondents contend is expressed in the insurance code, Utah Code Ann. § 31A–22–309 (Supp.1989). Section 31A–22–309(3)(a) reduces personal injury protection benefits (including reasonable medical expenses up to $3,000 and partial lost wage compensation, as set forth in Utah Code Ann. § 31A–22–307 (Supp.1989)) payable by a no-fault insurer to an injured person by "any benefits which that person receives or is entitled to receive as a result of an accident covered in this code under any workers' compensation or similar statutory plan[.]"

■ We do not construe section 31A–22–309(3)(a) as an implied grant of discretionary power to the Industrial Commission to reduce workers' compensation benefits that must be paid by Yaleway. We interpret it as expressing the legislature's determination that, as between a no-fault insurer and a workers' compensation insurer or an uninsured employer, the no-fault insurer should not bear the burden of paying the benefits due to an employee accidently injured in the course of employment even if that injury occurred in a vehicle covered by the requisite no-fault insurance. Accordingly, the no-fault insurer is permitted by this statute to exclude from coverage provided under its insurance policy any liability for injuries that are compensable under the workers' compensation statute or a similar statutory plan. Although this provision would doubtless be critical in any action by National to recover the sums paid to Bevans under its policy, see note 7, *infra,* we conclude it is irrelevant in this

proceeding before the Industrial Commission involving only the employee and an employer who has carried no-fault insurance but not workers' compensation insurance.

The credit allowed by the Industrial Commission in this case reduces the injured employee's award of workers' compensation benefits and the uninsured employer's liability by $3,000, unlike the credit allowed in *Hudson v. Kaiser Steel Corp.,* 662 P.2d 29 (Utah 1983). In *Hudson,* the Utah Supreme Court permitted an offset of an employer's overpayment of temporary disability benefits against a permanent partial disability award, based on "equitable considerations" arising from a former statute giving the Industrial Commission the power to set a period of compensation "as the commission shall deem equitable." More recently, in *Kerans v. Industrial Comm'n,* 713 P.2d 49 (Utah 1985), the supreme court declined to read into the workers' compensation statute a provision allowing the Industrial Commission to set-off the compensation and medical expense benefits payable by an employer by amounts previously paid by the employer for an earlier injury erroneously thought to be compensable. *See also Anderson v. Industrial Comm'n,* 108 Utah 52, 157 P.2d 253 (1945) (upholding compensation award that did not credit employer with amount of medical benefits paid by employee's accident insurer).

We are aware of no statutory provision like that in *Hudson* that expressly or impliedly provides the Industrial Commission with the discretionary authority to reduce the workers' compensation benefits to be paid by an employer or its workers' compensation insurance carrier by the amounts received from an employer-financed no-fault insurance policy. And, like the court in *Kerans,* we refuse to read any such provision into the statute. We believe the public policies and competing interests at work in coordinating private insurance benefits with workers' compensation make it a problem properly addressed in comprehensive fashion by the Utah Legislature,[6] not

6. Legislatures have enacted diverse statutes addressing this issue, often making fine distinc-

by this court or the Industrial Commission. The Industrial Commission is not free to "legislate" in areas apparently overlooked by our lawmakers or to exercise power not expressly or impliedly granted to it by the legislature, even in the name of fairness. *See, e.g., Olympus Oil,* 778 P.2d at 1010 (without statutory authority, Commission may not adopt a rule making claimant's attorney fee payable by employer in addition to compensation benefits).

In affirming the order of the A.L.J. in this case, the Industrial Commission erroneously interpreted its enabling statute as providing it with the discretionary power to allow a credit to the employer for amounts received by the injured employee from a no-fault insurer. We hold that the legislature has not expressly or impliedly granted the Industrial Commission any discretion to make such a reduction.[7] The order of the Industrial Commission denying Bevans's motion for review and affirming the order of the A.L.J. is, therefore, vacated, and the case is remanded to the Industrial Commission for entry of an amended order awarding benefits to Bevans without any credit to Yaleway for the $3,000 paid by National.

DAVIDSON and LARSON, JJ., concur.

tions between different types of employer-financed insurance plans. *E.g., Halliburton Servs. v. Miller,* 720 P.2d 571, 578–79 (Colo.1986) (former statute authorizing reduction of workers' compensation disability benefits by amount of payments to injured employee from employer-financed *pension* benefits plan does not permit similar reduction for payments to injured employee from employer-financed *sickness* benefits plan); *Young v. Western Elec. Co.,* 96 N.J. 220, 475 A.2d 544 (1984) (statute authorizes agency to credit against compensation award payments made to injured employee by employer's disability and retirement pension plans).

7. This holding does not, of course, resolve the question of whether Bevans is entitled to retain the insurance proceeds paid by National. At the time payment was made to Bevans, the employer/employee relationship between Yaleway and Bevans for purposes of workers' compensation had not yet been adjudicated. In light of the fact that National's insurance contract specifically excludes its liability for bodily injury to any employee of Yaleway's who is injured in the course of employment or for any obligation of Yaleway under workers' compensation law, Record at 79, 82, it is probable that National will seek reimbursement of those funds.