**DEPARTMENT OF TRANSPORTATION, Petitioner,**

v.

**PERSONNEL REVIEW BOARD, and Billie J. McConnell, Respondents.**

No. 880282–CA.

Court of Appeals of Utah.

Sept. 7, 1990.

R. Paul Van Dam, Atty. Gen., Stephen G. Schwendiman, Chief, Asst. Atty. Gen., Neal T. Gooch (argued), Asst. Atty. Gen., Tax & Business Regulation Div., Salt Lake City, for petitioner.

L. Zane Gill (argued), L. Zane Gill, P.C., Salt Lake City, for McConnell.

Robert N. White, Executive Secretary, Utah Personnel Review Bd., Salt Lake City, for respondents.

Before BENCH, GREENWOOD, and LARSON,[1] JJ.

## OPINION

GREENWOOD, Judge:

The Utah Department of Transportation (UDOT) appeals a decision by the Personnel Review Board (PRB) of the State of Utah, which held that respondent, Billie J. McConnell (McConnell) was entitled to consideration for employment as an Engineering Associate III with UDOT. We reverse.

McConnell was first hired by UDOT in June 1972, as a draftsman, pay grade 9, and was assigned to the Cedar City office, District 5. After a six-month probation period, he was promoted to grade 11. McConnell worked as a draftsman for approximately four years, progressing to grade 13. At the time he was hired, McConnell had completed two years of college—level training as a drafting technologist. Between 1973 and 1976, McConnell completed work for a four-year certificate in Highway Engineering Technology.

In 1976, McConnell was promoted to Office Technician, grade 15, a position he filled until 1978. During this period he was promoted to grade 17. He performed many of the duties of an hydraulics engineer, under the supervision of UDOT engineers. Specifically, his responsibilities included hydraulics engineering for District 5, engineering design of roadways, review of governmental contract documents, and location survey and field work.

In March 1978, McConnell terminated his state employment and went to work as the engineering office manager for a private road construction firm. He both supervised and performed engineering design work, while under the supervision of a licensed engineer. He also supervised three field survey crews.

UDOT rehired McConnell in April 1984 as a grade 18 technician. By December 1985, he had advanced to grade 21. His responsibilities were essentially the same as before he left UDOT. During 1987, McConnell completed work for a fifth-year engineering certificate at a Utah college and passed the UDOT Engineering Qualification Exam (EQE) in April 1987.[2]

On May 18, 1987, UDOT announced an opening for an Engineering Associate III position in District 5, with a grade 27 salary range. On May 20, 1987, McConnell applied for the position. Upon receipt of McConnell's application, a personnel analyst for the Division of Personnel Management (DPM) found McConnell qualified for the position under current class specifications.[3]

On June 15, 1987, after DPM had communicated to UDOT that McConnell was qualified for consideration as an Engineering Associate III, UDOT notified McConnell that he did not meet the minimum qualifications for the position. This decision was apparently made with support from several members of the Career Board.[4] UDOT maintained that McConnell

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

2. The EQE is an exam particular to UDOT. It allows UDOT employees to qualify as engineers without having to go through the requirements set forth in the Professional Engineers and Land Surveyors Act, Utah Code Ann. §§ 58–22–1 to –12 (1989).

3. DPM was created by the Personnel Management Act, Utah Code Ann. §§ 67–19–1 to –29 (1986), to administer the state personnel system. DPM has exclusive power over the creation of job specifications and the certification of individuals as qualified to be hired or promoted under the job specifications. Utah Code Ann. § 67–19–8 (Supp.1989).

4. The Career Board aids in the professional development of UDOT engineers, makes recommendations to the director of UDOT concerning the hiring or promotion of individuals to the associate engineer series, and determines pro-

was not qualified because the 1987 class specification for Engineering Associate III required four years of engineering type experience *after* passing the EQE.

The Engineering Associate III class specification, effective January 1, 1987, states:

Education and Experience

1. Graduation from an accredited 4-year college or university with major study in civil engineering or closely related professional fields, plus four (4) years professional experience.

OR

2. Substitutions on a year-for-year basis as follows:

a. Graduate study in civil engineering or related fields for the required employment,

OR

b. Satisfactory completion of the E.Q.E. examination plus four (4) years (of) progressively responsible related experience for the required college degree.

UDOT interpreted the class specification to require McConnell to: (1) pass the EQE and have four years of progressively responsible related experience, because McConnell did not have an engineering college degree; and (2) have four years of professional experience which could only accrue after McConnell had passed the EQE and was considered eligible for engineering positions. UDOT conceded that McConnell had met the first requirement, but determined he lacked sufficient post-

motional and transfer priorities for available positions. The Career Board is chaired by the UDOT personnel manager, and includes two other personnel department members. Additional UDOT employees familiar with the hiree or who will be affected by the hiring decision are usually asked to join the Career Board. In this case, the Career Board was never formally convened because the Board convenes only when an applicant has met the minimum qualifications for the position.

5. This interpretation differed from that previously applied under the prior 1985 class specification for Engineering Associate III.

6. Utah Code Ann. § 67–19–15(4) (1986).

EQE professional work experience to satisfy the second requirement because he had worked only thirteen months subsequent to passing the EQE.[5]

On June 26, 1987, pursuant to statutory employee grievance procedures, McConnell grieved the disqualification decision to the director of UDOT, who also determined McConnell was not eligible (referred to as Step 4).[6] On July 17, 1987, DPM reversed its position on McConnell's eligibility, and, based upon UDOT's interpretation of the 1987 class specification, found he was not qualified for consideration as an Engineering Associate III. McConnell appealed the UDOT/DPM decision to PRB, for an evidentiary hearing (referred to as Step 5).[7]

The Step 5 hearing officer concluded that by failing to find McConnell qualified under the 1987 class specification, UDOT violated its own personnel rules because it failed to officially promulgate the new interpretation of the specification as a policy change. The hearing officer ordered that McConnell be considered along with all other qualified applicants for the position. To ensure unprejudiced consideration, an unbiased committee, acceptable to McConnell, was required to be temporarily appointed to make recommendations to the UDOT personnel manager.

UDOT appealed the Step 5 decision to the next level of PRB,[8] which unanimously affirmed the Step 5 hearing officer's decision in favor of McConnell. PRB's decision included the following conclusions:

7. In July 1987, this procedure was authorized under Utah Code Ann. § 67–19–25(5) (1986) (repealed Supp.1989). For current procedures see Utah Code Ann. §§ 67–19a–303 and 67–19a–401 to –408 (Supp.1989).

8. At the time of the appeal, PRB served as the final administrative appeals body to hear grievances brought by state employees against agencies. Utah Code Ann. § 67–19–20(5) (1986) (repealed Supp.1989). Current procedures provide for a Career Service Review Board to serve as the final administrative appeals body to hear such grievances. *See* Utah Code Ann. §§ 67–19a–201 to –202, 67–19a–204, and 67–19a–301 to –302 (Supp.1989).

1. DPM's definitions, clarifications, and interpretations of DPM-promulgated class specifications are superior to any agency's individual definition, clarification or interpretation of a job announcement or of the agency's interpretation of the subject class specification.

2. An agency's recruitment announcement is therefore subject both to DPM's class specification and to DPM's interpretation of the class specification.

3. If an agency wishes to change the interpretation of a class specification from DPM's interpretation, in the absence of precedence, that agency's recruitment announcement shall so state and shall be pre-approved by DPM, provided that the agency wishes to change any prior interpretation or to make an interpretation different from or contrary to DPM's, or contrary to PRB's previous interpretation of that specification.

4. DPM's interpretation is binding on agencies unless it is found that DPM abused its discretion or violated its own personnel rules in a particular circumstance.

5. UDOT's failure to communicate the change in interpretation to McConnell in the job announcement was an abuse of discretion warranting affirmance of the Step 5 hearing officer's remedy.

UDOT appeals, asserting that PRB's decision is erroneous because: (1) PRB failed to determine whether McConnell met the four-year professional experience requirement of the 1987 class specification; (2) the 1987 class specification should be interpreted differently than the 1985 class specification; (3) UDOT's interpretation of the 1987 class specification was not inconsistent with DPM's interpretation; and (4) UDOT

Policy No. 05–142 [9] would not lead a reasonable person to conclude that successful passing of the EQE would result in eligibility for engineering positions.

## STANDARD OF REVIEW

■ We must first determine the appropriate standard of judicial review of PRB's decision. The Utah Administrative Procedures Act (UAPA) is applicable to proceedings commenced on or after January 1, 1988. Utah Code Ann. § 63–46b–22(2) (1989). However, this action commenced well before January 1, 1988, and, therefore, we review UDOT's appeal under pre-UAPA law.[10] *See Johnson v. Department of Employment Sec.,* 782 P.2d 965, 968 n. 1 (Utah Ct.App.1989); *USX Corp. v. Industrial Comm'n of Utah,* 781 P.2d 883, 885 (Utah Ct.App.1989).

Three standards govern the scope of review of agency actions under pre-UAPA law. *Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526–27 (Utah 1988); *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 608–12 (Utah 1983). Agency rulings on issues of law are reviewed on a correction-of-error standard and receive no deference. However, agency findings of fact are highly respected and will not be overturned if supported by substantial evidence. Mixed questions of law and fact receive an intermediate level of review, which analyzes the decision for reasonableness and rationality. *Hurley,* 767 P.2d at 526–27.

When agency expertise and special knowledge aid in the application of statutory terms to factual situations, the decision is reviewed under a reasonableness standard. *Id.* at 527. Thus, agency interpretation of statutes "it is empowered to

---

**9.** UDOT policy 05–142 states in part, that "[a] passing score on this examination [EQE] does not guarantee promotion to engineering status but will establish an individual's eligibility for engineering positions as they become available." PRB found that

> a plain reading of the above-quoted provision would lead a reasonable person to conclude that successfully passing the EQE would establish a person's eligibility for engineering positions. The Agency's 1987 interpretation

of the subject class spec would appear to be in conflict—if not a contradiction—with the above-cited policy.

**10.** This action began when McConnell grieved the denial of his application, on June 26, 1987, to the department head level at Step 4. After an adverse decision at Step 4, McConnell appealed to the Step 5 hearing officer. An evidentiary hearing was conducted August 24, 1987 and continued on September 29, 1987.

administer is often inseparable from its application of the rules of law to basic facts." *Utah Dep't of Admin. Servs.*, 658 P.2d at 610. Under the Utah State Personnel Management Act, PRB was the ultimate administrative authority empowered to decide state employee grievances.[11] Therefore, since PRB is in a "superior position by virtue of expertise" to determine the appropriate procedures the Personnel Management Act requires for changing the interpretations of class specifications, we review its decision for reasonableness and rationality. *Hurley*, 767 P.2d at 527.

## ANALYSIS

UDOT argues that PRB failed to decide whether McConnell met the minimum qualifications for the Engineering Associate III position. UDOT reasons that before PRB could decide whether McConnell had met the minimum qualifications, it had to decide whether the work experience he had accrued prior to taking the EQE constituted "professional experience," because the 1987 class specification requires four years professional experience in addition to a college degree. UDOT urges that "professional experience" can accrue only after a person is certified as a professional, a function which the EQE serves.

The Step 5 hearing officer found that McConnell's work experience satisfied the requirement of four years of "progressively responsible related experience" as found in the 1987 class specification by applying DPM's previous interpretation of similar language found in the 1985 class specification.[12] PRB affirmed the Step 5 decision because it found UDOT had violated provisions of the Utah State Personnel Management Act. Utah Code Ann. §§ 67–19–1 to –29 (1989). In reaching this decision, PRB observed that under the 1985 specification,

work experience gained prior to passing the EQE had qualified another UDOT employee to be hired into an Engineering Associate III position approximately fifteen months after passing the EQE.

We find, however, that the 1987 modifications to the Engineering Associate III class specification created two separate and distinct minimum requirements, an "education" requirement and an "experience" requirement. The parties stipulated at the PRB hearing that the reason for McConnell's disqualification was his failure to meet the "experience" requirement. This "experience" requirement necessitated four years of "professional experience" and was the sole issue before PRB. The exclusive focus of PRB's action, however, was upon the interpretation of the term "progressively responsible related experience" which is found in the "education requirement," not upon the interpretation of "professional experience" which is found in the "experience" requirements. This is evidenced by the following statement in PRB's decision:

In passing, the Board notes additional confusion persisted in the step 5 proceeding toward understanding the distinction between "professional experience" and "progressively responsible related experience," even whether a distinction exists at all.

PRB's failure to address the "experience" requirement is understandable since the Step 5 hearing officer was equally remiss in addressing the issue. Instead of addressing DPM's interpretation of "professional experience," the hearing officer overturned DPM's decision by finding that UDOT had a duty to provide an advance interpretation of the minimum requirements contained in the job announcement issued by UDOT. This decision was erro-

---

**11.** Section 67–19–20(5). This authority of PRB was established when the Utah Personnel Management Act was enacted in 1979.

**12.** The 1985 class specification stated:
*Education and Experience*
(1) Graduation from an accredited 4–year college or university with major study in civil engineering or closely related fields, plus six (6) years experience in a closely related field.

OR
(2) Substitutions on a year-for-year basis as follows:
Satisfactory completion of the UDOT Engineer Qualification Examination plus eight (8) years experience in a related field or an equivalent combination of education and progressively responsible full-time paid employment in a closely related field.

neous in at least two particulars: (1) the job announcement does not control when it is in conflict with the class specification; and (2) there was no "new interpretation" of an old requirement, rather there was a new class specification which created a new requirement.

## I

 The job announcement erroneously listed the minimum requirements as a college degree "plus four (4) years experience in a closely related field." The class specification requires a college degree "plus four (4) years professional experience." Erroneous recitals of minimum requirements published in job descriptions are not binding when they are in conflict with the class specifications issued by DPM.

The priority of the official class specification over an erroneous job announcement description was directly addressed and affirmed by PRB in *Gallegos v. Office of Recovery Servs.*, Case No. 2 PRB 20 (1986). In that case, a job applicant claimed that an erroneous job announcement, rather than the class specification, established the minimum requirement for a position in a class series. PRB held that

> Section 7.d.(2)(e), establishes the supremacy of classification specifications ("class specs") over job announcements in the promotion of career service employees. *Such employees must meet the minimum qualifications set forth in the class specs. That provision takes precedence over job announcements, particularly if the latter happen to be innaccurate or out-dated.*

*Id.* at pp. 9, 10 (emphasis added).[13]

The hearing officer's decision was based upon a mistaken belief that DPM had applied the erroneous minimum requirements found in the job announcement to disqualify McConnell. The hearing officer's focus on a perceived "new interpretation" of an erroneous recital of the minimum requirements rather than on an interpretation of the correct minimum requirements left the issue properly before him unresolved. The hearing officer never decided whether DPM abused its discretion in interpreting the new "professional experience" provision to mean that only experience following qualification as an engineer would be considered.

PRB's failure to correct the hearing officer's erroneous legal conclusions, due to its own misguided attention on the "education" requirement rather than the "experience" requirement, constitutes an agency decision based upon erroneous legal conclusions which we have the authority to correct on review. *Utah Dep't of Admin. Servs.*, 658 P.2d at 608.

## II

 What was at issue before the PRB was not a "new interpretation" of the old language in a new specification, but rather, new language in a new specification. The 1987 changes to the 1985 specification were substantial.[14] The most significant change was the new requirement of four years of "professional experience." Nowhere in the 1985 classification was the term "professional experience" ever used. Officials of UDOT and DPM testified at the Step 5 hearing that the purpose of the change was to increase the minimum requirements so that there would be two separate and distinct types of experience required: (1) experience which could be applied as part of the

---

**13.** Personnel Management Rules and Regulations (1985 ed.), Section 7.d.(2)(f) provides:

> To be eligible for career service promotion, an employee must meet the minimum qualification specified in the class specification for the position and must have received a standard or higher performance rating within the last twelve months.

**14.** DPM's authority is established in the Utah State Personnel Management Act, which provides:

> It is the policy of this state that the Utah state personnel system be administered on behalf of the governor by a strong central personnel agency. *Any delegation of personnel functions should be according to standards and guidelines determined by the central personnel agency and should be carefully monitored by it.* Utah Code Ann. § 67–19–2(2) (1986) (emphasis added).

alternative to a college degree; and (2) experience which must follow a college degree or other educational qualification as an engineer.[15]

The failure of the Step 5 hearing officer and PRB to recognize the obvious and presumably proper 1987 class specification,[16] was an erroneous legal conclusion as to the legal effect of the 1987 changes to the class specification which effectively nullified the changes intended and achieved by the 1987 modifications.

## CONCLUSION

Had the Step 5 hearing officer and PRB applied the correct language which was at issue, and had they properly recognized the 1987 specification change, they could not have found DPM's interpretation to be unreasonable or an abuse of discretion. We, therefore, reverse.

BENCH and LARSON, JJ., concur.

---

**15.** An applicant without a satisfactory college degree could previously qualify with eight years of "experience in a related field or ... progressively responsible full-time paid employment in a closely related field." Following the 1987 changes, such an applicant must have (1) four years of "progressively responsible related experience," and (2) four years of "professional experience." (The only possible substitute for the four years of "professional experience" is four years of graduate studies.)

**16.** There is no suggestion that the 1987 class specification itself was not properly promulgated by DPM.