**Billy R. GILES, Plaintiff,**

v.

**INDUSTRIAL COMMISSION OF UTAH, Safeway Stores Incorporated (Self-insured), and the Second Injury Fund, Defendants.**

**No. 19711.**

Supreme Court of Utah.

Oct. 25, 1984.

Jay A. Meservy, Salt Lake City, for plaintiff.

Gilbert Martinez (Second Injury), Frank Nelson, Salt Lake City, for defendants.

HALL, Chief Justice:

Billy R. Giles appeals, by a writ of review, an order of the Industrial Commission denying worker's compensation benefits to him for a detached retina suffered while on the job.

Billy R. Giles had been employed by Safeway Stores, Inc., as a delivery truck driver since 1974. As part of his normal duties, he sometimes helped load his truck. Merchandise was on pallets that were lifted with a pallet jack. Very little manual lifting was required. Unloading of the truck was done by employees of the various stores, although Giles would usually help. Again, unloading was generally done using a power pallet jack.

On September 17, 1982, Giles was delivering bread. The bread was stacked in plastic trays, each loaded tray weighing 25 pounds. On this particular occasion, the bread had been stacked too high to clear the loader door. Giles thus had to move the top trays by hand. After the shortened stacks had been removed from the truck, Giles began to replace the previously removed trays. As he bent over and lifted two trays, small black spots ("floaters") appeared in the lower left corner of Giles' left eye. Giles did not inform his employer of the incident since he had been told by his doctor that floaters might occur as a result of eye surgery he had recently undergone.

The next day, September 18, 1982, Giles had backed his truck up to a dock to unload a delivery of milk. He reached down and grasped the latch handle of the truck door to lift it up, jerking hard as he did so. The load, however, had been stacked in such a way that it had tipped against the door and jammed it. Thus, the door did not respond to Giles' effort. Because of the force Giles exerted to start the door opening, he received a significant jar. At that moment, a large black spot about the size of a dime appeared in the lower left corner of the vision of Giles' left eye. A power jack later had to be used to raise the door sufficiently for two boys to crawl under and move the milk before the door could be opened.

Giles sought medical attention after completing his immediate responsibilities. Giles' wife notified his supervisor from the doctor's office. The doctor, after examining Giles, sent him directly to the hospital where surgery to repair a detached retina was performed on September 20.

Giles had had significant problems with his eyes prior to the September 1982 incidents. In March and August of 1975, Giles

had had surgery to remove cataracts from both eyes. In May and September of 1982, he had surgical lens implants in both eyes, being unable to wear bifocals or hard or soft external contact lenses. He returned to work with the permission of his doctor nine days after the September lens implant in his left eye.

Prior to the hearing before the administrative law judge for the Industrial Commission, Giles was examined by Dr. Gary Stanford at Safeway's request. Stanford concluded that Giles' retinal detachment was not caused by a work-related accident. Giles was also examined by Dr. H.H. Bartholomew at the request of the administrative law judge. Bartholomew concluded that the incident of September 17 did not cause Giles' detachment. Bartholomew further concluded that, because Giles had a predisposition to the injury because of retina surgery, the September 18 incident was not the cause of the detachment.

The administrative law judge found that the September 17 incident was not a compensable accident. However, she found that, while the injury on September 18 was largely a result of preexisting conditions, it constituted a compensable industrial accident because there was an unexpected occurrence combined with an immediate and identifiable result.

The Industrial Commission granted a motion for review by Safeway and the Second Injury Fund and summarily reversed the judge's order without hearing, additional discussion, or written findings.

U.C.A., 1953, § 35–1–85 states: "[I]t *shall* be the duty of the commission to make findings of fact and conclusions of law *in writing* .... " (Emphasis added.) While the Commission is not bound by the findings of the administrative law judge when the evidence is conflicting,[1] the Commission can and often does adopt the findings of the administrative law judge as its own.[2] Where the Commission does not make its own findings, it is presumed that the Commission has adopted the findings of the administrative law judge.[3] In light of the fact that the Commission in this case did not make its own findings of fact and conclusions of law and specifically reversed only the order of the administrative law judge,[4] this Court will presume adoption of the administrative law judge's findings and look to those for review.

In order for worker's compensation to be awarded in any given case, an accident must have occurred and there must be a causal connection between the accident and the injury claimed.[5] The mere showing of injury does not mean that a compensable accident has occurred.[6]

The meaning of the word "accident" is a question of law.[7] The standard set by the Commission can therefore be reviewed by this Court with no deference to the Commission.[8] However, whether the evidence conforms to the legal meaning is a question of fact.[9] The scope of review with regard to questions of fact has been affirmed repeatedly by this Court:

> [T]he reviewing court's inquiry is whether the Commission's findings are "arbitrary or capricious," or "wholly without

---

1. *United States Steel Corp. v. Industrial Comm'n,* Utah, 607 P.2d 807 (1980).

2. *Jones v. Ogden Auto Body,* Utah, 646 P.2d 703 (1982).

3. *See, e.g., Jones, id.* at 705.

4. "[W]e are of the opinion that the Motion for Review filed by the Defendants has merit and that the Order of October 21, 1983, should be reversed.
   It is therefore ordered that the Order of October 21, 1983, be, and the same is hereby reversed."

5. *Pittsburgh Testing Laboratory v. Keller,* Utah, 657 P.2d 1367 (1983).

6. *Sabo's Elec. Service v. Sabo,* Utah, 642 P.2d 722 (1982).

7. *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888 (1981).

8. *Board of Educ. v. Olsen,* Utah, 684 P.2d 49 (1984).

9. *Monfredi, supra* note 7.

cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.[10]

Accident has been defined by this Court as "an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events."[11]

The administrative law judge clearly applied the correct standard of law. She analyzed the incident in terms of normal activity and unexpected occurrences. The question then is whether the evidence in the case conforms to the legal meaning of accident.

■ The findings of fact of the administrative law judge support her conclusion that the "incident of September 18, 1982 [the jar resulting from the jammed door] constitutes an accident within the contemplation of the Worker's Compensation Act." Specifically, she found that:

Although opening the loading doors would certainly be considered a normal activity for a truck driver, the fact that the Applicant did not realize that the door was stuck when he jerked on it, removes the incident from the realm of the expected and normal consequences of such an activity. The Applicant testified that he received a significant jar as a result when the door did not give as expected. The detachment happened concurrently with the reported trauma. Had the Applicant merely opened a door and suffered the injury, there would be no question of compensability, but there was an unexpected occurrence combined with an immediate and identifiable result. The Applicant reported the incident as soon as possible and sought immediate medical care.

On appeal, Safeway does not suggest the retinal detachment did not occur at the time of the jar. Rather, Safeway argues that Giles was merely performing normal activities and contends that *Billings Computer Corporation v. Tarango*,[12] should be dispositive of this case. *Tarango*, however, is easily distinguishable. In *Tarango*, Mrs. Tarango injured her knee while at work. She had dropped some small objects and bent to pick them up. This Court found that the fact that Mrs. Tarango's injury occurred at work was a mere coincidence since dropping things and picking them up was commonplace and usual and could have happened anywhere.

Giles' injury, on the other hand, did not result from a commonplace or usual incident. A badly jammed delivery truck door is neither a commonplace occurrence nor one liable to happen anywhere but work. Further, a jar to the body resulting from an attempt to open that door is not usual.

Safeway also argues that the fact that the medical panel found that Giles had a predisposition to retinal detachment precludes the finding that Giles suffered a compensable accident.

Dr. H.H. Bartholomew, acting as the medical panel, found that Giles had a predisposition for retinal detachment. He said that 1% to 2% of people who have had cataract surgery would develop retinal detachment and that Giles' medical history indicated predisposition. Dr. Bartholomew opined that, since in predisposed people detachment could occur spontaneously or with minor trauma, Giles' work was not the cause of the detachment.

The administrative law judge declined to follow the recommendation of the medical panel and found that Giles' predisposition for detachment did not preclude him from compensation. She did not abuse her discretion in doing so. This Court, in *Sabo's Electronic Service v. Sabo*,[13] stated that

**10.** *Monfredi, supra* note 7 at 890.

**11.** *Carling v. Industrial Comm'n*, 16 Utah 2d 260, 399 P.2d 202 (1965). *See also Frito-Lay, Inc. v. Jacobs*, Utah, 689 P.2d 1335 (1984); *Sabo, supra*

note 6, at 725; and *Monfredi, supra* note 7, at 890.

**12.** Utah, 674 P.2d 104 (1983).

**13.** *Supra* note 6.

the findings of the medical panel are not determinative: "It is the Commission, however, and not the medical panel, that has the ultimate responsibility of deciding whether an *identifiable* accident has occurred." [14]  Further, the Court has said: "The law is well settled that the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable and that [a] ... failure brought about by exertion in the course of employment may be an accident within the meaning of the act." [15]

The administrative law judge's findings that Giles had suffered an accident and that there was a causal connection between the accident and the injury were not arbitrary or capricious or contrary to the one inevitable conclusion from the evidence. There was clearly evidence to support it.

The order of the Industrial Commission is therefore reversed.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

14.  *Id.* at 725.

15.  *Powers v. Industrial Comm'n,* 19 Utah 2d 140, 143–44, 427 P.2d 740, 743 (1967).