**VALI CONVALESCENT AND CARE INSTITUTIONS, a Utah corporation, Plaintiff, Appellant, and Cross–Appellee,**

v.

**DIVISION OF HEALTH CARE FINANCING, Defendant, Appellee, and Cross–Appellant.**

No. 880434–CA.

Court of Appeals of Utah.

July 27, 1990.

---

Spencer E. Austin, Julia C. Attwood (argued), Parsons, Behle & Latimer, Salt Lake City, for plaintiff, appellant, and cross-appellee.

R. Paul Van Dam, State Atty. Gen., Brian L. Farr (argued), Asst. Atty. Gen., for defendant, appellee, and cross-appellant.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Vali Convalescent and Care Institutions ("Vali") appeals the judgment of the third district court affirming the final determination of the executive director of the Department of Health. This appeal concerns

Vali's entitlement to interest as a matter of law and whether Vali settled its interest claim. The appeal also poses the question of how a reviewing court should regard the decision of an agency head which is inconsistent with that of the agency's hearing officer who, alone, took testimony. We reverse in part, affirm in part, and order remand to the Department of Health for a limited purpose.

## FACTS

At all times relevant to this appeal, Vali was the owner and operator of nursing homes which provided services to Medicaid recipients in Utah. The Utah Department of Health, Division of Health Care Financing ("DOH"), is responsible for making payments to facilities which provide services to Medicaid recipients.

In January of 1980, Vali sought reimbursement from DOH for funds expended on Medicaid recipients in 1978 and 1979. DOH contested the amounts claimed by Vali and refused to pay those amounts. Soon after, the Bureau of Medicaid Fraud commenced an investigation of Vali. In April of 1982, the Bureau terminated its investigation, concluding there was insufficient evidence of fraud to support criminal charges.

After the Bureau concluded its investigation, the parties began to negotiate the amount owing to Vali. Intermittently throughout 1983, 1984, and the early part of 1985, the parties attempted to resolve their dispute through informal administrative processes. At one point in the negotiations, DOH tendered a check to Vali containing a restrictive endorsement which would have released all claims Vali had against DOH. Vali refused to negotiate the check and an informal hearing was scheduled for February 28, 1985, to resolve the dispute.

Two days prior to the February 28 hearing, an attorney for Vali sent a letter to the executive director of DOH requesting an interim payment of $223,046.66 to Vali. The letter stated, with our emphasis:

[T]his is the absolute minimum that [Vali] will be due under the circumstances. We can then proceed with the informal hearing and any subsequent proceedings to determine if Mr. Brown is due any further monies.

It would appear that [DOH] has had the benefit of funds that rightfully belong to Mr. Brown, for a period in excess of four years. *Interest alone* on the agreed upon figure *would conservatively be $100,000.00.*

Informal hearings were held on February 28 and March 20, 1985. During these days, as reflected in the hearing officer's decision, the parties debated over a host of costs, charges, and offsets, basically using the hearing officer as a kind of arbitrator. The figures discussed were exclusively principal amounts. Neither party raised the subject of interest.

Soon after the hearings, the hearing officer issued his decision. That decision, which like the parties' discussions dealt in no way with either the issue or amount of interest, recommended a disposition for each charge and credit in issue. The decision was further refined in subsequent correspondence. Based upon the hearing officer's decision as supplemented by the correspondence, DOH calculated and offered to Vali, in a letter dated April 3, 1985, the amount of $272,362.03.

On about April 4, 1985, DOH delivered a "mutual release" to Vali, which DOH regarded as an appropriate means of implementing the recommended settlement. But, unlike the hearing officer's decision, the release spoke in terms of settling "all claims, ... including interest." Vali refused to sign the release. On April 5, 1985, Vali nonetheless gave a letter to DOH accepting the $272,362.03 settlement figure. Neither DOH's April 3 letter nor Vali's April 5 letter mentioned whether or not interest was included in the settlement amount.

On May 13, the parties met to discuss their conflicting positions on whether the settlement figure was intended to be inclusive of interest owing to Vali. DOH claimed that it was. Vali claimed that it was not. The parties failed to resolve the

issue at the May 13 meeting, and determined to adjudicate the interest issue in a formal hearing. However, on about May 14, 1985, DOH again delivered to Vali a "mutual release" purporting to settle all claims between the parties, but omitting a specific reference to interest. Vali refused to sign this second release form.

On May 16, 1985, Vali received a check for $274,223.13 and an accompanying letter from DOH. The letter stated that the amount represented "full settlement of all claims and demands arising from the informal hearings." It also stated that the amount included 6% interest from the date Vali accepted the settlement. The check did not contain a restrictive endorsement. On May 16, 1985, Vali negotiated the check.

Consistent with the parties' agreed method for resolving the interest deadlock, a formal hearing was held in July 1985 before a hearing officer to consider the question of whether Vali had settled and compromised any claim it had to interest when it agreed to the settlement amount of $272,362.03, and in any event whether it lost its claim when it negotiated the May 16, 1985, check. For purposes of the hearing, the parties stipulated to certain basic facts such as the relationship between the parties, the exchange of correspondence between the parties, dates of informal hearings, and the subjects of those hearings. Extensive testimony was also received from a number of witnesses.

The hearing officer adopted the stipulated facts in his written findings and conclusions. In addition to the stipulated facts, the hearing officer found that Vali never considered the matter of interest settled or compromised, that Vali had clearly stated its intent to claim interest prior to the informal hearing, and that DOH knew, or should have known, Vali had not settled its claim to interest. He concluded that the parties had only settled the amount of principal. Furthermore, he concluded that Vali was entitled to interest under the Utah Procurement Code.[1]

The executive director of DOH, after reviewing the record and the findings and conclusions of the hearing officer, purported to sustain his findings of fact[2] but overruled his conclusions of law. She concluded that by April 5, 1985, the parties had an enforceable executory contract of settlement which included any claim Vali had to interest. Moreover, she concluded that Vali's negotiation of the May 16, 1985, check amounted to an accord and satisfaction and thus an absolute defense to its claim to interest.[3] Finally, the director concluded that Vali was in any event not statutorily entitled to interest under either the Utah Prompt Payment Act[4] or the Utah Procurement Code.

Vali sought review of the executive director's order in third district court pursuant to Utah Code Ann. § 26-23-2 (1984).[5] The court affirmed the ultimate decision of the executive director. It concluded that no statutory basis for interest existed and, because the principal sum had been determined through administrative proceedings

---

1. See Utah Code Ann. § 63-56-64 (1986).

2. The director stated that she sustained the hearing officer's recommended findings of stipulated facts. She apparently did not intend to sustain his additional findings on the contested evidence which supported his conclusion that the parties only settled the issue of principal and not that of interest.

3. Although the director, a medical doctor by training, concluded that Vali had settled its interest claim and that an accord and satisfaction existed, she did not articulate the reasons for her conclusions, which were contrary to those of the law-trained hearing officer. She simply overruled the hearing officer's conclusions and entered unexplained conclusions of her own.

4. See Utah Code Ann. §§ 15-6-1 to -5 (1986).

5. Utah Code Ann. § 26-23-2 (1984) provided for initial review of DOH action in district court. Section 26-23-2 was superseded by the Administrative Procedures Act, Utah Code Ann. §§ 63-46b-1 to -22 (1987), which provides for direct review of all formal agency action by either the Supreme Court or the Court of Appeals. See § 63-46b-16 (1987). See also Taylor v. Utah State Training School, 775 P.2d 432, 433 n. 1 (Utah Ct.App.1989). Had judicial review of the executive director's decision been sought today, the case would have been brought directly to this court. See Utah Code Ann. § 78-2a-3(2)(a) (1989).

rather than an actual judgment, Vali could not claim common law prejudgment interest.

Although the district court affirmed the decision of the executive director, it did not accept the executive director's findings and conclusions regarding the settlement issues. Rather, it appears to have seen the basic facts and the other issues much the same as the hearing officer did. The district court reiterated the hearing officer's findings that the parties had, in the informal hearings, settled the principal amount owing but that interest had not been raised or argued. Moreover, it concluded as a matter of law that the actions of the parties did not amount to an accord and satisfaction.

On appeal, Vali argues that we should sustain the district court's conclusions concerning settlement and accord and satisfaction but that we should reverse the district court concerning entitlement to interest. DOH, on the other hand, argues that we should sustain the district court concerning entitlement to interest but reverse concerning the other two issues.

## I. STANDARDS OF REVIEW AND RELATED MATTERS

Although we will again consider the applicable standard in the context of each substantive issue dealt with in this opinion, a general overview of the applicable standards of review and some related precepts may prove helpful.

### A. Appellate Court Deference

■ This appeal is taken from the trial court's review of an administrative agency decision. That review was limited to a review of the administrative record. In such cases, we need not accord any particu-lar deference to the decision of the trial court, although we may well find that court's analysis persuasive. *Davis County v. Clearfield City*, 756 P.2d 704, 710 & n. 8 (Utah Ct.App.1988). Basically, we review the decision of the agency as if judicial review of that decision had been sought directly in this court. *Id.*

■ The question of what deference should be accorded to the decision of the administrative agency is more complicated. Different standards apply to different aspects of administrative adjudications. When reviewing an agency's findings of basic fact, courts traditionally accord the findings considerable leeway and only disturb those findings if they are "arbitrary and capricious." *USX Corp. v. Industrial Comm'n*, 781 P.2d 883, 886 (Utah Ct.App. 1989). Such findings are arbitrary and capricious when there is no evidence of any substance to support them.[6] *Id. See also Hurley v. Board of Review*, 767 P.2d 524, 526–27 (Utah 1988); *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 608–09 (Utah 1983); *Taylor v. Utah State Training School*, 775 P.2d 432, 433 (Utah Ct.App.1989). When reviewing pure questions of law, courts generally apply the "correction-of-error" standard and accord the agency decision no particular deference. *Hurley*, 767 P.2d at 526; *Taylor*, 775 P.2d at 433.

■ For "ultimate facts," mixed questions of law and fact, interpretations of "special law" or the agency's own regulations, and a host of other matters between the "pure fact" and "general law" extremes, we apply an "intermediate standard," according the agency decision some deference and affirming the disposition if it is reasonable and rational.[7] *Hurley*, 767 P.2d at 527; *Utah Dep't of Admin. Servs.*,

---

6. The Utah Administrative Procedures Act, not applicable to this case, has modified somewhat our standard for reviewing the factual determinations of an administrative agency. *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 67 (Utah Ct.App.1989). Somewhat less deference is accorded in connection with the review of an agency's factual determinations when the Administrative Procedures Act is applicable, given the act's reference to "substantial evidence when

viewed in light of the whole record before the court." *Id. See also USX Corp. v. Industrial Comm'n*, 781 P.2d 883, 886 (Utah Ct.App.1989).

7. The "reasonable and rational" test for mixed questions of law and fact has not been changed by the Utah Administrative Procedures Act. *See Pro–Benefit Staffing, Inc. v. Board of Review*, 775 P.2d 439, 442 (Utah Ct.App.1989).

658 P.2d at 610; *Taylor*, 775 P.2d at 433–34.

### B. Agency Expertise

Although helpful, these three standards only provide the starting point for our analysis. We must then factor into these standards the expertise of the agency on the particular issue.

> The more likely it is that agency expertise will assist in resolving an issue, the more deference courts should give to the agency's resolution. The less pertinent agency insight is—or the more likely it is that judicial expertise will be most helpful—the less deference need be paid by reviewing courts to the agency's disposition.

*Taylor*, 775 P.2d at 434.

It would appear that the Department of Health has comparatively little expertise concerning the key issues in this case. On the other hand, entitlement to interest, settlements, and accord and satisfaction are issues with which courts are quite conversant. Indeed, it may be safely ventured that we have greater expertise on the pivotal issues in this case than does DOH.

With these considerations in mind, we turn to the specific arguments on appeal. We first consider whether Vali was entitled to interest as a matter of law. Then we will discuss DOH's two arguments concerning settlement, i.e., whether a settlement of interest was reached during the informal hearing process and, if it was not, whether an accord and satisfaction nonetheless occurred when Vali ultimately negotiated DOH's check.

### II. LEGAL ENTITLEMENT TO INTEREST

▪ Vali's basic entitlement to interest is a question of law. Consequently, we need not accord any particular deference to the decisions below but review them for legal correctness. *Hurley v. Board of Review*, 767 P.2d 524, 526–27 (Utah 1988)

(agency decision); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985) (trial court decision).

On appeal, Vali presents three theories for its entitlement to interest.[8] The first two theories are based upon Utah Code Ann. § 15–6–3 (1986) and Utah Code Ann. § 15–1–1 (1953). The third theory is premised on a claim of common law entitlement to interest on the overdue debt.

### A. Section 15–6–3

The Utah Prompt Payment Act provides in pertinent part:

> Interest shall accrue and be charged on payments overdue under § 15–6–2 [requiring the state to promptly pay for services or property] at the rate of 15.5% per annum beginning on the day after payment is due, if the payment due date is specified by contract, or on .the 61st day after receipt of the invoice, if no payment is specified by contract. Interest ceases to accrue on the date payment is made.

Utah Code Ann. § 15–6–3 (1986). Vali argues that this section of the act provides a statutory basis for its interest claim.

▪ The district court concluded, and we agree, that Utah Code Ann. § 15–6–4 (1986) precludes the Utah Prompt Payment Act from being a basis for interest in this case. Section 15–6–4 provides: "If the agency's failure to timely pay interest as required by § 15–6–3 is the result of a dispute between the agency and the business over the amount due or over compliance with the contract, the provisions of this act are inapplicable." Utah Code Ann. § 15–6–4 (1986). Although Vali argues that there was no "real" dispute between the parties over the amount to be paid to Vali, that position is untenable in light of the evidence. The dispute produced a fraud investigation; numerous exit conferences, hearings and other negotiations; and ultimately a "compromise" settlement. Because there was

---

**8.** Vali has wisely abandoned its claim to entitlement of interest under the Utah Procurement Code. As the district court correctly concluded, the Utah Procurement Code only applies to contracts entered into after 1980 and is thus inapplicable to Vali's contract at issue in this case. *See* Utah Code Ann. § 63–56–2(1) (1986).

clearly a dispute, the Utah Prompt Payment Act does not provide a statutory basis for the recovery of interest.

## B. Section 15–1–1

▉ Vali also argues Utah Code Ann. § 15–1–1 (1980) creates a statutory right to interest. That section provided in pertinent part: "The legal rate of interest for the loan or forbearance of any money, goods or things in action shall be six per cent per annum...."[9] *Id.* The district court held that § 15–1–1 does nothing more than define what the rate of interest should be in those instances where interest accrues as a matter of law but no specific rate has been agreed to; it does not create a right to interest where none otherwise exists. We agree. Therefore, Vali may not rely on § 15–1–1 as a statutory basis for its entitlement to interest,[10] although if it is entitled to interest on some valid basis § 15–1–1 establishes the *rate* of interest to which it is entitled.

## C. Common Law

The district court concluded that Vali was not entitled to interest under common law theories of recovery.[11] Apparently, the court determined that common law principles did not apply where entitlement to the principal amount was determined in *administrative* rather than judicial proceedings. We disagree.

▉ The law in Utah, including where the debt is owed by a governmental entity, is to allow "interest on overdue debts even where no statute so provides." *Boards of Educ. v. Salt Lake County Comm'n*, 749 P.2d 1264, 1267 (Utah 1988). *See also Board of Educ. v. Salt Lake County*, 659 P.2d 1030, 1036 (Utah 1983). The policy reason for this rule "is that, because of the delay, the debtor has the beneficial use of monies that do not belong to it, while the creditor is denied the beneficial use of those same monies to which it is legally entitled." *Boards of Educ.*, 749 P.2d at 1267.

▉ Although usage of the term "common law" may tend to connote judicial involvement, we see no reason consistent with the cases just mentioned why the rule and policy for allowing interest on overdue debts would be different simply because a particular debt was the subject of administrative rather than judicial proceedings.[12] Consequently, we decline to adopt that view and hold that the general rule allowing interest on overdue debts, even those owed by an arm of the state, applies in this case.[13] As indicated above, the applicable rate is that specified in § 15–1–1.

## D. Extinguishment

▉ DOH argues that, even if common law rules apply, Vali is not entitled to inter-

---

9. Section 15–1–1 was amended in 1981 and now prescribes an interest rate of 10%. *See* Utah Code Ann. § 15–1–1 (1989).

10. Vali relied on *Lignell v. Berg*, 593 P.2d 800 (Utah 1979), to support its argument for interest under § 15–1–1. *Lignell* does not support Vali's position. In *Lignell*, the Court discussed and resolved the issue of entitlement to interest. *After* determining that interest was due, the Court identified § 15–1–1 as the statute which set the applicable rate of interest under the facts in that case. *Id.* at 809 & n. 14.

11. DOH argues that Vali never asserted below that it was entitled to interest as a matter of common law. In light of the record and the conclusions of the district court, this argument is without merit.

12. This would be particularly so where, as Vali alleges happened here, the principal amount was arrived at through a negotiated settlement which contemplated administrative resolution of the interest issue another day. As both parties recognize, the law favors settlements. *See Tracy–Collins Bank & Trust Co. v. Travelstead*, 592 P.2d 605, 607–09 (Utah 1979). A rule disallowing interest when the principal amount is determined through settlement, whether under administrative auspices or otherwise, would certainly have a chilling effect on settlements in cases where the amount of disputed principal can be resolved by negotiation even though no settlement can be reached concerning interest.

13. For policy reasons, it is sometimes ordered that interest held to accrue on particular classes of government debt will accrue only prospectively from the decision so holding. *See Boards of Educ. v. Salt Lake County Comm'n*, 749 P.2d 1264, 1267–68 (Utah 1988); *Board of Educ. v. Salt Lake County*, 659 P.2d 1030, 1037 (Utah 1983). No such argument was advanced by DOH at the administrative level, the trial court, or on appeal.

**446** 

est because of the common law theory of "extinguishment." According to DOH, a claim for interest is extinguished whenever a party accepts payment of the principal amount. Apparently, this would be so, in DOH's view, even though the party contemporaneously indicates its intention to recover interest.

The only case DOH cites to support its theory is *Cox Constr. Co. v. State Road Comm'n*, 583 P.2d 85 (Utah 1978). DOH cites language from *Cox* which states: "Where interest is payable merely as damages for non-payment of money when due, acceptance of the principal amount bars any claim for interest." *Id.* at 87. DOH has taken this language out of the context of that case. First, the decision in *Cox* was not based upon extinguishment but rather upon the theory of accord and satisfaction. *Id.* Second, the decision was based upon the fact that the creditor stipulated away its claim to interest. *Id.* The Court implied that acceptance of the principal would not have barred a claim to interest if the creditor had continued to reserve its claim to interest. *Id.* For these reasons, *Cox* does not support DOH's position. In the absence of any Utah authority supporting DOH's theory, we decline to adopt this position, which flies in the face of sound commercial practice and common sense.[14]

### E. Conclusion

There is no statutory basis for Vali's claim to interest. Vali is, however, entitled to interest under the common law at the *rate* prescribed by statute, provided it did not settle the issue of interest in one way or another.

We turn now to a consideration of whether Vali settled its claim to interest as part of the negotiations which culminated in its agreement with DOH. We will then consider whether, in any event, it lost its claim to interest, under the doctrine of "accord and satisfaction," when it negotiated DOH's check.

### III. THE INITIAL SETTLEMENT

The parties disagree about whether the issue of interest was compromised and settled when the parties agreed upon the sum of $272,362.03. Vali argues that the figure only represents the amount of principal which was owing and that it had reserved the issue of interest. DOH, on the other hand, argues that the sum settled upon includes any claim for interest that Vali had against DOH.[15]

There was conflicting testimony and evidence at the formal hearing concerning the scope of the settlement. For example, witnesses for Vali consistently testified that the issue of interest had never been raised during the informal hearing process, that Vali always considered the issue of interest to be reserved, and that the only settlement involved the amount of principal due. Witnesses for DOH, on the other hand, testified that the parties were negotiating, and arrived at, a "bottom line" figure which would resolve all the issues between the parties.

 It appears that the hearing officer found the testimony of Vali more credible than that of DOH. His ultimate factual conclusion was that the parties had clearly reached a settlement agreement but that the settlement did not extend to the issue of interest. In reaching this decision, the

---

**14.** For example, it could not be seriously argued that if a borrower fell behind in its payments on a bank loan, and after making no payments for six months submitted payment in the amount of all principal due, that the bank's claim for unpaid interest would be extinguished if it accepted the principal payment and applied it against the loan.

**15.** Since the interest claimed exceeds $100,000, it is remarkable that the matter was left in a posture which would make it subject to debate. Both parties *appear to have been guilty of* "lying in the woods." It appears that Vali kept quiet

about interest to facilitate an agreement on principal and expedite its receipt of at least some money. It appears that DOH said nothing hoping that a "final" settlement would be deemed to include interest even though interest had not been dealt with. In pursuing this course, both parties lost one of the major benefits of any settlement, the avoidance of further dispute and litigation. It is baffling to us that the matter would not have been raised explicitly and dealt with head-on by the parties during their extensive negotiations.

officer expressly adopted the stipulated findings of the parties. He then went on to state in his conclusions of law that Vali clearly stated a claim for interest prior to the informal settlement hearings, Vali never intended to settle the matter of interest during those hearings, and DOH "knew or should have known that [Vali] was not stipulating to the release of interest claims." Although these facts were couched as conclusions, they are essentially findings of fact[16] to which the parties did not stipulate but which are consistent with and supported by Vali's testimony before the hearing officer.

The executive director did not accept the recommended findings and conclusions of the hearing officer. In her final decision, the executive director stated that she sustained "the recommended findings of stipulated fact of the ALJ." She obviously did not, however, accept his findings that Vali never intended to settle the interest issue or that DOH knew or should have known that Vali had not agreed to the "release" of its interest claim.[17] Had she accepted these findings, she could not have concluded, as she did, that

> an enforceable executory contract of settlement was established between the Claimant and [DOH] as of April 5, 1985; and that as such a valid, binding, conclusive compromise and settlement was effected between [DOH] and [Vali] when Vali accepted as payment in full a settle-

ment for the amount agreed upon by the parties.

The executive director did not explain the basis for her ultimate factual conclusions. Perhaps she perceived some difficulty with the officer's assessment of the credibility of witnesses, a troublesome notion since she had no opportunity to see the witnesses and observe their demeanor. Perhaps she found other facts more significant than those which would necessarily turn on the credibility determinations of the hearing officer.[18] *See* S. Breyer & R. Stewart, *Administrative Law and Regulatory Policy* 209–11 (2d ed. 1985) (decisive issue may not be witness credibility and, even where decisive issue is credibility, other factors besides witness demeanor play into credibility determination). Whatever her reasons, she wholly failed to articulate them in her decision.

As previously noted, we review an agency's conclusions of ultimate fact under a "reasonable and rational" standard. *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983). Thus, we must determine whether the ultimate factual conclusions of the executive director were reasonable and rational. We do so with the knowledge that her conclusions were contrary not only to the hearing officer's recommended decision, but also were contrary to the specific factual findings made by the hearing examiner, which findings have abundant evidentiary support and turn in part on the officer's credibility

---

**16.** "[W]e are not bound by the trial court's classification of a finding of fact or a conclusion of law; we will make that classification ourselves." *50 West Broadway Assocs. v. Redevelopment Agency*, 784 P.2d 1162, 1171 (Utah 1989). Although the classification was made in this case by the hearing officer and not a trial court, the rule is the same.

**17.** Unlike the executive director, the third district court was obviously persuaded by the hearing officer's findings. In its decision, it explicitly found no accord and satisfaction and implied that the issue of interest had not been otherwise settled. Although the court ultimately affirmed the decision of the executive director, it only did so because it failed to see any statutory or common law right to interest.

**18.** For example, waiver exists where a party has a right, knows of that right, and through its *objective conduct* evidences an intent to waive

that right regardless of some privately-held intention to the contrary. *B.R. Woodward Mktg., Inc. v. Collins Food Serv., Inc.*, 754 P.2d 99, 101–04 (Utah Ct.App.1988). While the record in this case points to enough ambiguity about the inferences fairly to be drawn from Vali's outward conduct as to make any such conclusion questionable, it may be that the executive director concluded that Vali, having previously asserted a claim to interest, waived it by not raising it in the informal hearings.

Other legitimate reasons may also exist for her conclusion, as may illegitimate ones, such as the implications for her department of an unbudgeted interest assessment exceeding $100,-000. However, at this stage we can only speculate as to the reasons for her conclusion because she failed to articulate those reasons.

assessment of witnesses he viewed but the executive director did not. The specific question we must confront is how to treat this discrepancy in evaluating, for reasonableness and rationality, the executive director's decision on the dispositive ultimate facts.

### A. Utah Cases

Utah appellate courts have not resolved this precise issue. However, several Utah cases are helpful to our analysis. In *United States Steel Corp. v. Industrial Comm'n*, 607 P.2d 807 (Utah 1980), petitioner challenged a final decision of the Industrial Commission which was contrary to the recommended decision of an administrative law judge. The Court held that the administrative reviewing authority was "not limited by the examiner's findings, though, generally it must consider those findings as a part of the record as a whole." *Id.* at 810. The Court further stated that the Commission could, "in its review of the record made before the Administrative Law Judge, ... *make its own findings* on the credibility of the *evidence* presented. The Commission's findings ... will not be disturbed by this Court if they are supported by substantial evidence." *Id.* at 811 (emphasis added).

Although not recited in the Court's opinion in *United States Steel*, the Commission apparently made its own factual findings. The Court concluded that the Commission's findings and decision were supported by substantial evidence and upheld the decision. *Id.* at 812. The *United States Steel* decision identifies the general judicial approach to inconsistent agency decisions, but does not provide guidance for cases like the instant one, where the administrative reviewing authority fails to make adequate findings which support its ultimate conclusion.[19]

The Utah Supreme Court was confronted with another Industrial Commission deci-

sion reversing the decision of its administrative law judge in *Giles v. Industrial Comm'n*, 692 P.2d 743 (Utah 1984). In *Giles*, the Commission had summarily reversed the judge's order "without hearing, additional discussion, or written findings." *Id.* at 745. The Court recognized the general law set forth in *United States Steel*. It stated, however, that "[w]here the Commission does not make its own findings, it is presumed that the Commission has adopted the findings of the administrative law judge." *Id.* The Court held that the findings of the administrative law judge "were not arbitrary or capricious or contrary to the one inevitable conclusion from the evidence." *Id.* at 747. It therefore reversed the order of the Industrial Commission.

Like the *Giles* case, the executive director in this case reversed the hearing examiner's decision without taking more evidence, discussing her conclusions, or making additional written findings other than those of ultimate fact.

The final Utah case helpful to our analysis is *Milne Truck Lines, Inc. v. Public Serv. Comm'n*, 720 P.2d 1373 (Utah 1986). Though *Milne* is factually dissimilar to this case, it stresses the importance of adequate findings supporting agency decisions. In *Milne*, the Court stated, with our emphasis:

> It is also essential that the Commission make *subsidiary findings* in sufficient detail that the critical subordinate factual issues are highlighted and resolved in such a fashion as *to demonstrate that there is a logical and legal basis for the ultimate conclusions*. The importance of complete, accurate, and consistent findings of fact is essential to a proper determination by an administrative agency. To that end, findings should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law are

---

**19.** This court recently decided a case similar to *United States Steel* in *USX Corp. v. Industrial Comm'n*, 781 P.2d 883 (Utah Ct.App.1989). The Industrial Commission had reversed a decision of its administrative law judge. In doing so, the Commission identified other evidence in the

record which supported its contrary conclusion. *Id.* at 887. We affirmed the Commission's decision because the facts relied upon by the Commission reasonably supported its conclusion. *Id.*

reached.... *Without such findings, this Court cannot perform its duty of reviewing the Commission's order....* *Id.* at 1378.

▪ Though none of the Utah cases cited directly govern the case before us, taken together they provide some guidance. It is clear from *United States Steel* that the executive director was not bound to follow the recommendation of the hearing examiner. As long as she considered the examiner's recommendation, she could enter her own findings on the evidence of record and reach a different decision so long as it was reasonable. However, as in *Giles*, the executive director did not articulate adequate factual findings of the caliber touted in *Milne* which support her decision. In *Giles*, that failure resulted in the reversal of the final administrative decision because, in the Court's view, the facts only supported one decision—that of the administrative law judge.

We are not prepared to say that the facts in this case only support the decision recommended by the hearing examiner. Moreover, unlike in *Giles*, the executive director made some effort to support her decision and at least included in her decision a characterization of the ultimate facts, albeit absent any subsidiary findings other than those stipulated to, which are essentially *pro forma* in nature.

### B. Cases from Other Jurisdictions

Several well-reasoned decisions from other jurisdictions suggest an appropriate approach to, and resolution of, this case. We are particularly persuaded by our Idaho counterpart which addressed the issue in *Department of Health & Welfare v. San-*

doval, 113 Idaho 186, 742 P.2d 992, 993–97 (Ct.App.1987). In *Sandoval*, the Idaho Court of Appeals appropriately recognized that a hearing officer's decision was merely a proposal which the ultimate agency decision maker could accept or reject.[20] 742 P.2d at 995. Moreover, the court recognized that it was the Commission's decision which the court reviewed and not the hearing officer's proposed decision. *Id.*

Having noted its focus on appeal, the Idaho court went on to state that "common sense indicates that in weighing the reasonableness of the Commission's findings, a court can not wholly disregard the hearing officer's impressions drawn from first-hand exposure to the witnesses.[21] The report of the hearing officer is part of the entire record embraced by judicial review." *Id.* The court did not suggest that the Commission had to accept the determinations of the hearing officer but that

> where credibility is crucial and where first-hand exposure to the witnesses may strongly affect the outcome, we think the Personnel Commission should not override the hearing officer's impressions unless it makes a cogent explanation of its reasons for doing so. Such an explanation is essential to meaningful judicial review, and it is a logical adjunct to the Commission's statutory duty to supplement its decisions with findings of fact and conclusions of law.[22]

*Id.* at 996. In *Sandoval*, the Commission had failed to give reasons for reversing the recommended decision of its hearing officer. The court vacated the decision and remanded to the Commission "for reconsideration of whether a genuine, articulable reason exist[ed]." *Id.* at 997.

---

**20.** As in *Sandoval*, the hearing officer's decision in this case is a recommendation from which the ultimate decision maker, the executive director, makes the final determination. *See* Utah Code Ann. § 26-23-2(1) (1984).

**21.** A trial court's opportunity to see the witnesses and judge their demeanor is frequently cited as the basis for the doctrine that appellate courts will not disturb a trial court's credibility determinations or its findings of fact which turn on credibility. *See, e.g., Redevelopment Agency v. Tanner*, 740 P.2d 1296, 1301–02 (Utah 1987);

*McBride v. McBride*, 581 P.2d 996, 997 (Utah 1978).

**22.** A similar requirement applies in this case. When the executive director's determination is inconsistent with that of the hearing officer, the Utah Health Code requires the director to "prepare and file ... findings of fact and conclusions of law to support the final determination." Utah Code Ann. § 26-23-2(4) (1984). As the Idaho court reasoned, this requirement undoubtedly exists to enhance meaningful review on appeal. *Sandoval*, 742 P.2d at 996.

The Oregon Court of Appeals took a similar position in *Deschutes County v. Employment Div.*, 82 Or.App. 630, 728 P.2d 950 (1986). In *Deschutes*, the reviewing board purported to adopt the findings of an immigration judge but overruled his conclusions without stating its reasons. 728 P.2d at 952. The court concluded that "[f]or meaningful judicial review, [the board was required to] explain why the facts found [led] to its decision." *Id.* See also *Blaine v. Moffat County School Dist.*, 748 P.2d 1280, 1290–91 (Colo.1988) (en banc).

*Sandoval* relied in part upon the United States Supreme Court case of *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The *Universal Camera* Court stated that the examiner's findings should be considered as part of the whole record on appeal. *Id.* at 493, 71 S.Ct. at 467. It noted that the examiner's findings, which were based upon personal observation of the witnesses, might tend to negate the reasonableness of the contrary findings and conclusions of the reviewing agency board. *Id.* at 496. The Court found this to be particularly true where witness credibility was important in the case. *Id.*[23]

### C. Conclusion

■■■■ We are persuaded by *Sandoval* and *Deschutes* that remand to the executive director is also appropriate in this case. Such a remedy is consistent with Utah case law, pursuant to which the administrative decision maker must give "sufficiently detailed [findings] to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached." *Milne*, 720 P.2d at 1378.

Where, as here, the hearing officer's findings were apparently based to a large extent upon his credibility determinations, and the executive director took no live testimony, it is even more important for the executive director to adequately detail her reasons for reaching a different result. *Sandoval*, 742 P.2d at 996. Because she failed to do so, we are unable to meaningfully review the reasonableness of her decision that a settlement of the interest issue was reached in the informal hearings. See *id.* We thus remand to the district court with the instruction to remand to the executive director, for the limited purpose of providing her an opportunity to make more adequate findings in support of, and more fully articulate her reasons for, the determination she made. She may do so only with reference to the record on which she initially acted.[24] Without that explanation we are unable to assess the reasonableness of her decision.

## IV. ACCORD AND SATISFACTION

■■■■ We consider now the alternative claim that, even if no settlement had otherwise been reached, an accord and satisfaction was accomplished when Vali negotiated DOH's check. Vali and DOH stipulated to many of the facts which provide the basis for DOH's accord and satisfaction claim and other pertinent facts are essentially undisputed. The executive director concluded as a matter of law that those facts demonstrated an accord and satisfaction. Conclusions based upon stipulated and undisputed facts are legal conclusions which we review under the correction-of-error standard. See *Sacramento Baseball Club, Inc. v. Great Northern Baseball Co.*, 748 P.2d 1058, 1060 (Utah 1987).

**23.** Other federal courts have followed the rationale developed in *Universal Camera*, holding that the examiner's findings should be considered in determining the reasonableness of the administrative reviewing authority's decision. See, e.g., *McMullen v. Immigration & Naturalization Serv.*, 658 F.2d 1312, 1318 (9th Cir. 1981); *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1082–84 (9th Cir.1977); *Retail Store Employees Union, Local 400 v. NLRB*, 360 F.2d 494, 496 (D.C.Cir.1965).

**24.** On remand, the executive director may only make her explanations with reference to the record which came to her initially. She is not entitled at this late date to receive additional evidence or to make her own credibility determinations through re-examination of the witnesses. Cf. *Capital Gen. Corp. v. Utah Dep't of Business Regulation*, 777 P.2d 494, 496 (Utah Ct.App.1989) (review board held its own evidentiary hearing before making ultimate decision at odds with that recommended by ALJ).

█ "Accord and satisfaction" is "[a] method of discharging a claim whereby the *parties agree to give and accept something in settlement of the claim* and perform the agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance...." *Black's Law Dictionary* 7 (abr. 5th ed. 1983) (emphasis added). Utah courts have held that an accord and satisfaction may exist where one party has tendered a check in full payment of a disputed claim and the other party has accepted and negotiated the check. *See, e.g., Marton Remodeling v. Jensen,* 706 P.2d 607, 609 (Utah 1985). DOH asserts that there was an accord and satisfaction when Vali accepted and cashed the check for $274,223.13.

The hearing officer concluded that Vali's actions did not amount to an accord and satisfaction. He noted that the check, unlike another previously tendered, did not contain a restrictive endorsement and that DOH tendered the check knowing full well that Vali claimed additional interest above and beyond the agreed upon amount of $272,362.03 plus post-agreement interest. The executive director disagreed with the hearing officer's conclusion and held to the contrary "as a matter of law."

After examining the law in Utah on accord and satisfaction, the district court concluded that Vali's actions did not amount to an accord and satisfaction. The court's primary reason for reaching this conclusion was that Vali was not given notice that the check included and extinguished Vali's claim to interest. We agree with the conclusion of the hearing officer and the district court, which we find to be valid as a matter of law given the undisputed facts concerning this issue.

█ An accord and satisfaction requires two elements—a bona fide dispute about the amount allegedly owing and an understanding that the amount is being "tendered in full settlement of the entire dispute." *Marton Remodeling,* 706 P.2d at 609. *See also Tates, Inc. v. Little Am.*

*Ref. Co.,* 535 P.2d 1228, 1229–30 (Utah 1975). Although there was obviously a dispute concerning what ultimate amount DOH would have to pay Vali, there was clearly no mutual understanding that the tendered amount included Vali's claim for interest and thus no understanding that the amount was "tendered in full settlement of the entire dispute."

The pivotal facts in this regard were stipulated to by the parties or are otherwise not in dispute. The issue of interest was not expressly raised during the informal hearings. Between the informal hearings and the time DOH tendered its check, the parties discussed but failed to resolve the issue of interest. DOH attempted to resolve the issue through two release forms, but Vali rejected both attempts. The only understanding to come out of the April 13, 1985, meeting was that the parties could not resolve the interest question, agreed to disagree, and determined to seek administrative adjudication of whether the settlement included Vali's claim for interest. Finally, the check ultimately tendered by DOH and negotiated by Vali did not contain a restrictive endorsement.[25] It was accompanied instead by a letter which stated, with our emphasis, that the amount "represents full settlement of all claims and demands *arising from informal hearings conducted by Steve Gatzemeier on February 28, 1985 and March 20, 1985* concerning Vali Care & Convalescent Institutions"—a characterization which basically begged the question of whether such "claims and demands" included Vali's right to interest.

This case is similar to that of *Tates* in which the court stated:

> The proposition upon which the claimed accord and satisfaction appears to rest is that ... the plaintiff either knew, or should be deemed to have known, that the check was being offered in full satisfaction of the debt. But such a supposition is not sufficient.... [I]t

---

25. As previously noted, an earlier check tendered by DOH contained a restrictive endorsement, one typical of those used to implement an accord and satisfaction. That first check was rejected by Vali.

must be made to appear that it was clearly so understood and agreed.

*Id.* at 1231. As in *Tates*, it cannot be said that Vali clearly understood the check was tendered in full and final settlement of all issues between the parties. DOH knew that the interest issue had not been raised in the informal hearing and that Vali relied upon this fact as a basis for its continuing claim to interest. Its letter accompanying the check did not specifically mention the issue of interest and was not phrased broadly so as to include issues beyond those actually discussed in the informal hearings. Vali obviously negotiated the check expecting that the interest issue continued to be reserved. Consequently, we hold on the undisputed facts that there was, as a matter of law, no accord and satisfaction. The executive director erred in concluding to the contrary.

## CONCLUSION

There is no statutory basis for Vali's claim to interest. However, assuming Vali did not settle the issue of interest, it would be entitled to interest at the legal rate as a matter of common law. We order remand to the executive director to support and explain her conclusion that the parties settled the issue of interest. Where, as here, the hearing officer's determination depends in large part upon the credibility of witnesses, the executive director must fully articulate the reasons for her contrary conclusions. Finally, no accord and satisfaction exists in this case and that contention, which we have put to rest, need not be the focus of further consideration by the executive director.

BILLINGS and GARFF, JJ., concur.