2003 UT App 60

**KENNECOTT UTAH COPPER CORPORATION, Plaintiff and Appellant,**

v.

**UTAH STATE TAX COMMISSION, Defendant and Appellee.**

No. 20020899–CA.

Court of Appeals of Utah.

March 11, 2004.

Rehearing Denied April 20, 2004.

Third District, Salt Lake Department; The Honorable Leon A. Dever.

Mark K. Buchi and Steven P. Young, Holme Roberts & Owen LLP, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Clark L. Snelson, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges JACKSON, ORME, and THORNE, Jr.

## OPINION

THORNE, Jr., Judge:

¶ 1 The district court granted the Utah State Tax Commission's Commission motion for summary judgment. Kennecott Utah Copper Corporation Kennecott appeals. We affirm.

## BACKGROUND

¶ 2 Throughout the 1990s, Kennecott sought to modernize its business to better comply with Utah's Air Conservation Act. *See* Utah Code Ann. §§ 19–2–101 to –127 (2001)[1] To further its efforts, Kennecott developed a plan to build a "pollution control facility." Pursuant to Utah Code Annotated section 59–12–104(11) (2000), if Kennecott obtained "certification" for this pollution control facility, then all tangible personal property incorporated into the facility would be ex-

---

1. Because there have been no significant changes in this portion of the Air Conservation Act, *see* Utah Code Ann. §§ 19–2–101 to –127 (2001), we cite to its most current version. Any deviation from this general rule will be noted in the text of the opinion.

empt from sales and use tax at the point of sale.

¶ 3 On April 29, 1994, Kennecott applied for such a tax certification. The Department of Environmental Quality (DEQ) reviewed Kennecott's plan and granted Kennecott certification on September 6, 1994, and again on December 5, 1995.

¶ 4 After the DEQ granted Kennecott its certification, Kennecott had the option to avoid paying sales and use tax at the time of purchase by using its tax certificates. However, the subcontractors working on the Kennecott project were not authorized to use Kennecott's tax certificates. Consequently, the subcontractors purchased materials for the project, paid sales and use tax on those purchases, and then presented their receipts to Kennecott. After the project was complete, Kennecott sought a refund from the Commission.

¶ 5 Several years after Kennecott had been certified, the legislature amended Utah Code Annotated section 19–2–124 (the Amendment) to address payment of interest on tax refunds to owners of pollution control facilities. The Amendment became effective on May 3, 1999, three months before Kennecott filed its request for a refund.

¶ 6 Prior to its amendment, section 19–2–124 was silent concerning whether interest would be paid on a tax refund for pollution control facilities. The Amendment provided for the payment of interest but set several limitations. For example, if the owner of a pollution control facility, or its agents, made any purchases after the facility was certified and choose to pay sales and use taxes, the interest on the refund would begin to accrue thirty days after the owner filed a request for a tax refund. *See id.* § 19–4–124(2)(d)(ii)(B).

¶ 7 Prior to 1999, the Commission customarily paid interest on pollution control facility tax refunds pursuant to Utah Administrative Code R865–19S–83.[2] This rule provided that if the owner of a pollution control facility, or its agents, made any purchases after the facility was certified and choose to pay sales and use taxes, the interest on the refund would begin to accrue thirty days after the owner filed its request for a tax refund. *See* Utah Admin. Code R865–19S–83.

¶ 8 On August 13, 1999, three months after the Amendment became effective, Kennecott filed a request with the Commission for a refund of taxes, with interest, calculated from various dates between 1995 and 1999. Relying upon the Amendment, the Commission refunded to Kennecott taxes paid, but the interest paid was limited to that which accrued beginning thirty days after the refund request was filed.

¶ 9 Kennecott subsequently filed a petition for redetermination, claiming that interest should accrue from the date the tax was actually paid. After conducting a hearing, the Commission denied Kennecott's motion for redetermination. Kennecott renewed its petition and requested a formal hearing on the matter. A formal hearing was held on July 11, 2002. After the Commission again denied its motion, Kennecott appealed to the district court. In the district court, both Kennecott and the Commission filed motions for summary judgment. The district court denied Kennecott's motion, but granted the Commission's. Kennecott appeals.

## ISSUE AND STANDARDS OF REVIEW

¶ 10 The issue we must decide is whether the Commission properly applied Utah Code Annotated section 19–2–124(2)(d)(ii)(2001) to Kennecott's tax refund.

(1) When reviewing formal adjudicative proceedings commenced before the com-

---

**2.** Utah Code Annotated section 19–2–127 authorizes the Commission to formulate regulations regarding how the tax benefits provided through Utah Code Annotated section 19–2–124 can be effectuated. Section 19–2–127 provides:

> **Rules for administering certification for tax relief**
> In addition to the powers granted it, the [Commission] may formulate, amend, or cancel

rules establishing procedures for processing and evaluating applications for certification, establishing procedures for the issuance and revocation of certificates, and all other matters pertaining to the [Commission] in administering certification for tax relief on pollution control facilities.

Utah Administrative Code R865–19–83 has been in effect since 1993.

mission, the Court of Appeals or Supreme Court shall:

(a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and

(b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610 (2001).

¶ 11 Statutory interpretation is a question of law that we review for correctness. *See State Farm Mut. Auto. Ins. Co. v. Green,* 2003 UT 48,¶ 44, 486 Utah Adv. Rep. 3, 89 P.3d 97.

## ANALYSIS

■ ¶ 12 Kennecott argues that it has a common law right to interest on a tax refund accruing from the date the tax is paid.[3] Kennecott further argues that if the Amendment controls the amount of its tax refund, its common law right will be infringed.

¶ 13 Before addressing Kennecott's claim, we must first place the claim in context. The Utah Legislature adopted section 19–2–124 in the 1980s and amended it May 3, 1999. Prior to the Amendment, section 19–2–124 exempted pollution control facilities from sales and use tax, but the statute did not specifically address how or whether interest on tax funds was to be calculated.

¶ 14 In contrast, Administrative Code R865–19S–83, which the Commission adopted on May 17, 1993, specifically directed how interest on tax refunds was to be calculated. The administrative rule provides, in relevant part:

**Pollution Control Facilities Pursuant to Utah Code Ann. Section 59–12–104.**

. . . .

B. After the facility is certified, qualifying purchases should be made without paying tax by providing an exemption certificate to the vendor.

1. If sales tax is paid on qualifying purchases for certified pollution control facilities, it will be deemed that the overpayment was made for the purpose of investment. Accordingly, interest, at the rate prescribed in Section 59–1–402, will not begin to accrue until 30 days after receipt of the refund request.

Utah Admin. Code R865–19S–83.

¶ 15 The legislature amended section 19–2–124 in 1999 and included, for the first time, specific language addressing interest. Section 19–2–124(2)(d)(ii) now provides:

(ii) If a person files a claim for a refund of taxes under Subsection (2)(d)(ii) paid on a purchase of tangible personal property or services used in the construction of or incorporated into a pollution control facility *that was certified under Section 19–2–125 at the time of the purchase,* interest shall accrue to the amount of the refund granted by the State Tax Commission:

(A) at the rate prescribed in Section 59–1–402; and

(B) *beginning 30 days after the day on which the person files a claim for a refund under Subsection (2)(d).*

Utah Code Ann. § 19–2–124(2)(d)(ii)(A), (B) (emphasis added). The Commission calculated interest on Kennecott's refund as directed by section 19–2–124 and Administrative Code R865–19S–83. Accordingly, interest on the refund was paid "beginning 30 days after the day on which the person files a claim for a refund," rather than from the date the sale and use tax was paid, as Kennecott requested. Utah Code Ann. § 19–2–124(2)(d)(ii)(B). Kennecott argues that an application of the Amendment in this situation infringes on its common law right to collect interest from the date the tax was paid. We disagree.

¶ 16 Arguing against the application of the Amendment, Kennecott properly notes that " '[i]t is a long-standing rule of statutory

---

**3.** Kennecott correctly notes that there is a common law right in Utah to collect interest on a debt owed, even against a state entity. *See Vali Convalescent v. Commission of Health Care Fin.,* 797 P.2d 438, 445 (Utah Ct.App.1990). However, *Vali Convalescent* does not directly address the issue of when the right to interest accrues or from which date interest is to be calculated. *See id.* at 440–41.

construction that a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively unless the legislature has clearly expressed that intention.' " *Roark v. Crabtree,* 893 P.2d 1058, 1061 (Utah 1995) (citations omitted); *accord INS v. St. Cyr,* 533 U.S. 289, 316, 121 S.Ct. 2271, 2288, 150 L.Ed.2d 347 (2001).

¶ 17 "[T]he first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether [the legislature] has directed with the requisite clarity that the law be applied retrospectively." *St. Cyr,* 533 U.S. at 316, 121 S.Ct. at 2288 (quotations and citation omitted). Next, we evaluate whether applying the statute retroactively interferes with existing substantive rights, resulting in "manifest injustice." *Id.; See also Landgraf v. USI Film Prods.,* 511 U.S. 244, 249, 114 S.Ct. 1483, 1488 (1994); *Bradley v. School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016 (1973).

¶ 18 "When we interpret a statute, we look first to the plain language. In doing so, we give all statutory provisions relevance and meaning independent of other provisions. If we find ambiguity in the statute's language, we look to legislative history and other policy considerations for guidance." *ExxonMobil Corp. v. Utah State Tax Comm'n,* 2003 UT 53, ¶ 14, 86 P.3d 706, (citations omitted).

■ ¶ 19 After reviewing the plain language of the Amendment, we conclude that section 19–2–124 is ambiguous about the retroactive application. The plain language of the Amendment is silent regarding whether the statute was intended to apply to taxes paid prior to the Amendment's effective date. In the absence of clear statutory direction, we must then determine whether applying section 19–2–124(2)(d)(ii) retroactively would have unacceptable consequences. The United States Supreme Court has indicated that such a determination requires us to examine

whether [applying the amendment] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear [legislative] intent favoring such a result.

*Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. Furthermore, determining if a statute impermissibly applies "retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *St. Cyr,* 533 U.S. at 321, 121 S.Ct. at 2290 (quotations and citations omitted).

¶ 20 The issue of retroactivity was similarly addressed in *Bradley,* 416 U.S. at 696, 94 S.Ct. at 2006. There, the United States Supreme Court addressed whether section 718 of Title VII, the Emergency School Aid Act, could be applied retroactively to award attorney fees to a plaintiff who sought to desegregate a local public school district. *See id.* at 698–99, 94 S.Ct. at 2010. The Court stated that it "anchor[ed]" its holding "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. The Court noted that manifest injustice arises when an "intervening change to a pending action ... infringe[s] upon or deprive[s] a person of a right that had matured or become unconditional," or when "new and unanticipated obligations ... [arise] without notice or an opportunity to be heard." *Id.* at 720, 94 S.Ct. at 2020–21.[4]

¶ 21 The Court concluded that applying section 718 did not result in "manifest injustice" to the school district. *Id.* at 721, 94 S.Ct. at 2021. The Court noted that when the district court awarded the plaintiff attor-

---

4. The Court in *Bradley v. School Board of Richmond* stated that "[t]he concerns ... relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights."

416 U.S. 696, 717, 94 S.Ct. 2006, 2019 (1973). We do not discuss the nature or the identities of the parties in this case, as our conclusion that the new legislation did not create a change in the law is determinative in this case.

ney fees below, there was an "absence at the time of any explicit statutory authorization for an award of fees in school desegregation actions." *Id.* at 706, 94 S.Ct. at 2013. The district court chose to award fees and cited as authority "its general equity power." *Id.* The Supreme Court concluded:

> The availability of [section] 718 to sustain the award of fees against the [school district] therefor merely serves to create an *additional basis or source* for the [school district's] potential obligation to pay attorney's fees. *It does not impose an additional or unforeseeable obligation upon it.* Accordingly, upon considering the parties, the nature of the rights, and the impact of [section] 718 upon those rights, it cannot be said that the application of the statute to an award of fees for services rendered prior to its effective date, in an action pending on that date, would cause "manifest injustice."

*Id.* at 721, 94 S.Ct. at 2021 (emphasis added).

¶ 22 Similarly, we conclude that applying the Amendment to Kennecott's tax refund does not cause manifest injustice. The district court's conclusion that Kennecott was entitled to interest, which began to accrue thirty days after the refund request, was based upon the court's interpretation of section 19–2–124(2)(d)(ii) *and* Utah Administrative Code R865–19S–83. The district court reasoned that Utah Administrative Code R865–19S–83 had been in effect since 1993 and that Utah Administrative Code R865–19S–83 and section 19–2–124(2)(d)(ii) had identical effects upon Kennecott's tax refund. In short, the interest on Kennecott's refund would be the same regardless of whether the Commission relied upon rule R865–19s–83 or section 19–2–124(2)(d)(ii). In essence, the district court concluded that if section 19–2–124(2)(d)(ii) was applied to events arising before its enactment, the Amendment did not "impose additional or unforeseeable obligations" on Kennecott. *Bradley,* 416 U.S. at 721, 94 S. Ct at 2021.

**5.** We also note that Kennecott had knowledge of the Amendment to section 19–2–124, but choose to seek the refund after the effective date. Had

¶ 23 We agree with this reasoning and conclude that the Amendment "merely serves to create an additional basis or source" to justify the Commission's interest calculation. *Bradley,* 416 U.S. at 721, 94 S. Ct at 2021; *cf. Neilson v. San Pete County,* 40 Utah 560, 123 P. 334, 340 (1912) (noting that if a taxpayer is entitled to a refund, that taxpayer is also entitled to interest, calculated from the date of the *request*). Kennecott's argument that it was harmed by the retroactive application of the Amendment is without merit because in the absence of the Amendment to section 19–2–124, the result would be the same.

 ¶ 24 We next consider whether the Commission properly applied the Amendment to Kennecott's tax refund. The Amendment plainly states that if a pollution control facility is "certified under Section 19–2–125 at the time of purchase, interest shall accrue to the amount of the refund granted . . . beginning 30 days after the day on which the person files a claim for a refund." Utah Code Ann. § 19–2–124(2)(d)(ii)(B). Kennecott filed its refund request on August 13, 1999. The Commission calculated the refund amount and then added interest to that amount based on an accrual date thirty days after the request. Thus, because the Commission awarded interest on the amount due starting thirty days after the refund request was filed, we conclude that the Commission properly interpreted and applied section 19–2–124(2)(d)(ii) and that the district court did not err in granting the Commission's motion for summary judgment.[5]

## CONCLUSION

¶ 25 Utah Code Annotated section 19–2–124 was amended on May 3, 1999, codifying a pre-existing administrative rule regulating the calculation of interest on tax refunds applicable to pollution control facilities. Pursuant to section 19–2–124(2)(d)(ii) and Utah Administrative Code R865–19S–83, if a pollu-

Kennecott sought its refund earlier, the analysis might be somewhat different.

tion control facility is certified at the time purchases are made, the interest on the refund will begin to accrue thirty days from the date of the refund demand. The Commission calculated interest on Kennecott's refund in compliance with this rule. Accordingly, the district court properly granted the Commission's motion for summary judgment.

¶ 26 I CONCUR: NORMAN H. JACKSON, Judge.

¶ 27 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.